**WORLDCRISA CORPORATION and Crisa Corporation, Plaintiffs–Appellees,**

v.

**Patrick J. ARMSTRONG, Defendant–Appellant.**

**No. 302, Docket 97–7053.**

United States Court of Appeals, Second Circuit.

Submitted Sept. 16, 1997.

Decided Oct. 16, 1997.

Peter R. Reynolds, Hartford, CT (Macdermid, Reynolds & Glissman, P.C., of counsel), for Defendant–Appellant.

Timothy P. Van Dyck, Hartford, CT (Edwards & Angell, Irene E. Bassock, of counsel), for Plaintiffs–Appellees.

Before: FEINBERG and WALKER, Circuit Judges, and REAL, District Judge.*

FEINBERG, Circuit Judge:

Defendant Patrick J. Armstrong appeals from an order of the United States District Court for the District of Connecticut, Robert N. Chatigny, J., refusing to grant a stay pursuant to the Federal Arbitration Act (the "FAA") of a suit against Armstrong brought by plaintiffs WorldCrisa Corporation ("WorldCrisa") and its parent Crisa Corporation ("Crisa"), collectively referred to hereafter as the "Crisa Corporations". Armstrong claims that the dispute is arbitrable pursuant to an agreement between him and WorldCrisa. For the reasons stated below, we reverse and direct the district court to grant the stay pending arbitration.

## I. Background

WorldCrisa is a wholesaler of hotel and restaurant supplies. On September 1, 1995, Armstrong and WorldCrisa entered into an

* Honorable Manuel L. Real, United States District Judge for the Central District of California, sitting by designation.

agreement (the "Agreement"), under which Armstrong left the employment of WorldCrisa and agreed as a "Closing Condition" of the Agreement to acquire a "controlling equity interest" in an "established" independent distributor of hotel and restaurant supplies (an "HRS Company") in the Southern California or Nevada market within 90 days after November 30, 1995 (the "Termination Date"). In return, WorldCrisa agreed to provide Armstrong or his designee (1) a credit to be used for merchandise, up to a monthly and aggregate maximum (the "Merchandise Credit"), and (2) additional merchandise on specified terms, with the provision of merchandise to commence immediately as of the Termination Date. The Agreement provided that WorldCrisa would have the option to declare the arrangement "null and void" if Armstrong failed to satisfy the Closing Conditions.

The Agreement contained an arbitration clause which provided that "any dispute between the Parties over the terms of this Agreement, or any claim of breach by either of the Parties" would be submitted to arbitration in California, subject to an express exception for claims involving confidentiality and non-competition issues.

Shortly after execution of the Agreement, WorldCrisa began to furnish merchandise on credit to Armstrong's designee under the Agreement, Hospitality Products, Inc. ("HPI"). In addition, WorldCrisa provided Armstrong with other benefits called for by the Agreement, including payment of compensation, vacation pay and reimbursement of expenses. On November 28, 1995, Armstrong executed a Guaranty, dated as of September 1, 1995, with the Crisa Corporations, under which he agreed to guarantee obligations owed to the Crisa Corporations by HPI. The Guaranty provided that Armstrong's obligation "was in no way conditioned upon any requirement that [the Crisa Corporations] first attempt to collect ... from [HPI]," that Armstrong waived "all defenses which may be available by virtue of any valuation, stay, moratorium law or other

similar law," and that Armstrong consented "to the non-exclusive jurisdiction" and venue in the state or federal courts of Connecticut.

From September 1995 to April 1996, WorldCrisa provided HPI with $264,000 in merchandise as part of the Merchandise Credit, and $189,212.47 in additional merchandise. Armstrong allegedly failed to acquire control of an HRS Company, and in May 1996 the Crisa Corporations brought the present lawsuit in the Connecticut district court (the "Connecticut Action"). The complaint alleged that Armstrong was "in default of his obligations under the ... Agreement," which was attached to the complaint, and sought to recover from Armstrong as guarantor of HPI's obligations $453,212.47 plus interest and costs allegedly owed by HPI for the merchandise sent to it under the Agreement.

In July 1996, Armstrong filed a demand for arbitration in California, alleging breach of contract and fraud claims against WorldCrisa. Subsequently, Armstrong filed a motion in the district court to stay the Connecticut Action pending arbitration. The district court denied the motion in October 1996. The court later granted Armstrong's motion for reconsideration, but in December reaffirmed its denial of a stay on the ground that the arbitration clause did not apply to a suit based on the Guaranty. This appeal followed.

## II. Analysis

■ Under Section 3 of the FAA, 9 U.S.C. § 3, a district court "must stay proceedings if satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding." McMahan Securities Co. L.P. v. Forum Capital Markets L.P., 35 F.3d 82, 85 (2d Cir.1994). The Act "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985) (emphasis in original). Review of the district court's arbitrability determination is *de novo.* McMahan Sec. Co., 35 F.3d at 86.

### A. The Stay as to WorldCrisa

■ The basic issue before us is whether the arbitration clause of the Agreement applies to this dispute. That clause covers "any dispute" between the parties to the Agreement "over the terms" of the Agreement or "any claim of breach" by either of the parties. WorldCrisa contends, among other things, that Armstrong's failure to fulfill the Closing Conditions is not a "breach" of the Agreement because until the Conditions were satisfied neither party owed a duty that could be breached. Likewise, according to WorldCrisa, its claim does not involve any dispute "over the terms" of the Agreement; rather, it simply requires a determination of whether Armstrong fulfilled those terms. Even if the dispute were within the scope of the arbitration clause, WorldCrisa argues that the provisions of the Guaranty described above constitute a waiver of Armstrong's rights under that clause. Armstrong disputes each of these arguments.

■ In accordance with the strong federal policy in favor of arbitration, Collins & Aikman Products Co. v. Building Systems, Inc., 58 F.3d 16, 19 (2d Cir.1995), the existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." Associated Brick Mason Contractors of Greater New York, Inc. v. Harrington, 820 F.2d 31, 35 (2d Cir.1987) (quoting AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986)). Likewise, close questions as to whether a waiver of arbitration has occurred are to be resolved in favor of arbitration. Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983). Arbitration is essentially contractual, however, and parties may not be forced into arbitration if that was not their true agreement. Collins & Aikman Prod. Co., 58 F.3d at 19. If an arbitration clause is narrowly worded and the dispute concerns a matter collateral

to the contract calling for arbitration, "a court should test the presumption [of arbitrability] by reviewing the allegations underlying the dispute and by asking whether 'the claim alleged implicates issues of contract construction...." Id. at 23. Finally, "[i]f the allegations underlying the claims 'touch matters' covered by the parties' ... agreements, then those claims must be arbitrated, whatever the legal labels attached to them." Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 846 (2d Cir.1987).

■ The arbitration clause at issue here does not contain the typically broad language that makes arbitrable all disputes "arising out of" or "related to" the contract or its breach. See, e.g., McCowan v. Sears, Roebuck and Co., 908 F.2d 1099, 1106 (2d Cir. 1990) ("[A]ny controversy between [the parties] arising out of or relating to this contract or the breach thereof shall be settled by arbitration.") On the other hand, the clause is by no means narrow. It is not necessary to make the nice determination of exactly where in the range between broad and narrow this clause fits. The clause is close enough to the "broad" end of the spectrum to justify a presumption of arbitrability here. Moreover, we believe that even without resort to the presumption the current dispute falls within the scope of the arbitration clause.

Plaintiff WorldCrisa ascribes a very narrow meaning to "breach", i.e., that the term refers only to a failure to fulfill an unconditional duty and not to a failure to satisfy a condition. We think that "breach," for purposes of construing the Agreement, does not have only the specific meaning that WorldCrisa would ascribe to it. Black's Law Dictionary (6th Ed.1990) defines "breach" more generally as "where one party to [a] contract fails to carry out [the] term, promise or *condition* of the contract." Id. at 188 (emphasis supplied). Certainly, the complaint in the Connecticut action flatly alleges that Armstrong defaulted under the Agreement. That sounds to us like a claim of breach, and at the very least raises issues that "touch matters" covered by the Agreement. Genesco, 815 F.2d at 846. Moreover, even if we assume that the Connecticut lawsuit does not

allege a breach by Armstrong, determination of whether or not he satisfied the Closing Conditions will necessarily involve dispute "over the terms" of the Agreement in light of the subsequent conduct of 'the parties. The record before us is sparse as to what actually transpired after Armstrong made his commitment in the Agreement. But a decision-maker may have to determine a number of related issues, e.g., whether WorldCrisa acted reasonably in rejecting any HRS Companies Armstrong may have proposed, which might well require an interpretation of what amounts to a "controlling equity interest" and whether a proposed HRS Company was an "established" one. We conclude that the dispute here is squarely covered by the arbitration clause.

■ WorldCrisa's attempt to rely on the Guaranty as a waiver of Armstrong's arbitration rights must also fail. The Guaranty does not mention the Agreement—much less its arbitration clause—and the Guaranty's provisions as to jurisdiction, venue, and waiver of moratorium and stay laws do not constitute the kind of clear and specific waiver required to defeat the express arbitration provision in the Agreement. The complaint in the Connecticut Action relies on Armstrong's alleged failure to satisfy his obligations (particularly the Closing Conditions) under the Agreement. Armstrong has a right to have issues related to that claim decided in the pending arbitration and is entitled, therefore, to a stay under § 3 of the FAA pending arbitration.

**B. The Stay of Crisa's Suit**

■ In addition to joining the arguments raised by plaintiff WorldCrisa, plaintiff Crisa argues that it is not a party to the Agreement and therefore is not bound by the arbitration clause of the Agreement—even if WorldCrisa is. There is authority to the effect that ordinarily such a clause in a contract cannot justify a stay under § 3 of the FAA as to someone who was not a party to the contract. Citrus Mktg. Bd. of Israel v. J. Lauritzen A/S, 943 F.2d 220, 224–25 (2d Cir. 1991); Nederlandse Erts–Tankersmaatschappij, N.V. v. Isbrandtsen Co., 339 F.2d 440, 441 (2d Cir.1964); cf. McCowan, 908

F.2d at 1107–08; Sierra Rutile Ltd. v. Katz, 937 F.2d 743, 751–52 (2d Cir.1991) (Mahoney, J., concurring). Ordinary principles of agency and contract law may, however, provide grounds for holding a non-signatory to an arbitration agreement, Thomson–CSF, S.A. v. American Arbitration Ass'n, 64 F.3d 773, 776 (2d Cir.1995) (citing incorporation by reference, assumption, agency relationship, veil-piercing/alter-ego, and estoppel as possible grounds).

■ It is arguable that Crisa could be bound even under these cases. We do not, however, think it necessary to determine the issue. We have recognized that district courts, despite the inapplicability of the FAA, may stay a case pursuant to "the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Nederlandse, 339 F.2d at 441 (quoting Landis v. North American Co., 299 U.S. 248, 254, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936)). Armstrong bears the burden of demonstrating that such a stay is justified, but on this record it is clear that he has done so.

The prejudice to Crisa if a stay is granted in this case is minimal. Crisa is not mentioned in the Agreement, and has alleged no other contract with Armstrong or HPI that might support liability under the Guaranty. To the extent that Crisa, even as a non-signatory of the Agreement, might be able to bring an action under the Guaranty based on the unjust enrichment of HPI, Crisa has not alleged that it (rather than WorldCrisa) provided any goods to HPI.

On the other hand, failure to stay this action would result in substantial prejudice to Armstrong, as litigating the Connecticut Action with Crisa alone would involve significant expense and inconvenience and might adversely affect the outcome of his arbitration against WorldCrisa. In IDS Life Ins. Co. v. SunAmerica, Inc., 103 F.3d 524 (7th Cir.1996), Chief Judge Posner noted that where a party to an arbitration agreement attempts to avoid that agreement by suing a related party with which it has no arbitration agreement in the hope that the claim will be adjudicated first and have preclusive effect in the arbitration, "[s]uch a maneuver should not be allowed to succeed, [and] ... is blocked ... by the principles of parallel-proceeding abstention, which ... require the court to stay the proceedings before it and let the arbitration go forward unimpeded." Id. at 530. We think the same principle applies in this case, in which a related non-party to an arbitration agreement has apparently brought a suit with the hope of having a similar effect. On this record, failure to grant a stay as to Crisa would be an abuse of discretion.

■ There is no allegation that Armstrong has done anything to impede the arbitration process, or that the arbitration will not be resolved within a reasonable amount of time. We note, however, that under our precedents the stay may provide that Crisa may move to vacate the stay if Armstrong impedes the arbitration process, or if the arbitration does not conclude within a reasonable time. Nederlandse, 339 F.2d at 442.

For the reasons given above, we reverse the order of the district court and remand with instructions that it stay the suit by WorldCrisa under § 3 of the FAA, and stay the suit by Crisa under its inherent powers.