128 F.3d 103
 PPG INDUSTRIES, INC., Plaintiff-Counter-Defendant-Appellant,
v.
WEBSTER AUTO PARTS INC.; Anthony Puleo, and Patricia Puleo,
Defendants-Counter-Claimants-Appellees.
 No. 1356, Docket 96-7429.
 United States Court of Appeals,
Second Circuit.
 Argued April 18, 1997.
Decided Oct. 20, 1997.
 
 Linda L. Morkan, Hartford, CT (Frank F. Coulom, Jr., Robinson & Cole, Hartford, CT), for Plaintiff-Appellant.
 Dominic Fulco III, Wethersfield, CT (William J. O'Sullivan, Baker & Fulco, Wethersfield, CT), for Defendants-Appellees.
 Before: WINTER, PARKER and PHILLIPS*, Circuit Judges.
 PARKER, Circuit Judge:
 
 
 1
 Appellant PPG Industries, Inc. ("PPG") filed two collection actions against two of its distributors. In the first action (the "Premium action"), PPG sued appellee Webster Auto Parts, Inc. ("Webster"), Premium Paint Company, Inc. ("Premium"), and Anthony and Patricia Puleo. In the second action (the "Webster action"), PPG sued Webster and the Puleos alone. In both actions, the appellees filed counterclaims against PPG. PPG filed a petition to compel the arbitration of the counterclaims asserted by Webster in the Webster action. The United States District Court for the District of Connecticut (Robert N. Chatigny, Judge ) denied the petition, finding that PPG waived its right to arbitration in the Webster action because it (1) failed to appeal an order denying arbitration in the Premium action; (2) engaged in discovery in the Premium action; (3) moved for summary judgment on counterclaims asserted in the Premium action. In addition, the district court found that ordering the matter to arbitration at this late stage would prejudice Webster. We agree that PPG's conduct in both the Premium and Webster actions was inconsistent with its contractual right to compel arbitration and that Webster was prejudiced by this conduct. Accordingly, we affirm the district court's order.I. BACKGROUND
 
 
 2
 PPG is a Pennsylvania corporation that manufactures and sells automotive refinish coating products. In 1988, Webster, a Massachusetts corporation, began serving as a distributor of PPG products. Anthony Puleo was the president and sole shareholder of Webster. In 1990, Puleo incorporated Premium in Connecticut to serve as a distributor of PPG products. Puleo was also the president and sole shareholder of Premium. On January 17, 1991, PPG entered into a contract with both Webster and Premium entitled "PPG Automotive Refinish Jobber Agreement" (the "Jobber Agreement").
 
 
 3
 To secure the inventory that they purchased on credit from PPG, Premium and Webster entered into security agreements with PPG, giving PPG a security interest in their inventory and equipment. In addition, Puleo and his wife, Patricia, personally guaranteed Webster's debts to PPG, Puleo executed a separate guaranty of debt on behalf of Premium, and Webster guaranteed payment for any PPG products sold to Premium.
 
 
 4
 The Jobber Agreement that PPG maintained with Webster and Premium contained an arbitration clause. That arbitration clause specifically exempted collection actions from its reach. The clause provided, in relevant part, the following:
 
 
 5
 A. Except for suits to enforce the provisions of Article VI [re. trademarks] or to collect on a delinquent account, any controversy or claim between the parties as to the provisions of this Agreement shall, upon written request of either party, immediately be referred jointly to the respective managements of each party for decision....
 
 
 6
 B. After exhausting the procedures set forth above, any controversy as specified in A above may be submitted for binding arbitration by either party....
 
 
 7
 PPG alleges that in October 1993, Puleo announced that he had begun selling the product line of one of PPG's competitors and would not be paying Webster's or Premium's outstanding debts. On October 21, 1993, PPG filed a collection action in the United States District Court for the District of Connecticut (Dorsey, J.), naming Webster, Premium, and both Puleos as defendants (the "Premium action"). As part of this action, PPG executed a writ of replevin, and the Hartford County Sheriff's Department, together with PPG's counsel and several PPG employees, took possession of Premium's inventory and equipment. On November 10, 1993, PPG filed a second collection action in Massachusetts state court, naming only Webster and the Puleos as defendants (the "Webster action"). The defendants in the Webster action removed the case to federal court in Massachusetts.
 
 
 8
 PPG sought nearly identical relief in both actions. In the Premium action, PPG sought $206,575 from Premium for inventory that Premium purchased from PPG; $29,444 from Webster for inventory that Webster purchased from PPG and an additional $206,575 as guarantor of Premium's debt; and both debts from the Puleos. In the Webster action, PPG sought $29,444 from Webster for inventory that Webster purchased from PPG; $206,575 from Webster as guarantor of Premium's debt; and both debts from the Puleos. Thus, the only difference between the two actions was that in the Premium action, PPG named both Premium and Webster as defendants and replevied Premium's inventory and equipment, whereas in the Webster action, Premium was not named and there was no replevin.
 
 
 9
 From October 1993 until early February 1994, the following occurred in the Premium action: In late October 1993, Premium noticed the depositions of three PPG employees. PPG moved for a protective order to stay the taking of these depositions. The district court denied this motion, and the depositions went forward.
 
 
 10
 On December 3, 1993, Premium filed an amended answer that raised six counterclaims against PPG. These counterclaims alleged that (1) PPG's replevin of Premium's inventory and equipment effected a de facto termination of the Jobber Agreement, in violation of the notice-and-cure provision of the Jobber Agreement; (2) the Jobber Agreement was really a franchise agreement governed by the Connecticut Franchise Act, and PPG breached that act by failing to provide Premium with sixty days' notice of termination; (3) PPG breached the implied covenant of good faith and fair dealing; (4) PPG tortiously interfered with Premium's business relations with customers and another supplier; (5) the seizure of Premium's inventory and equipment, accomplished in concert with various state actors, constituted a violation of due process actionable under 42 U.S.C. § 1983; and (6) PPG's wrongful conduct violated the Connecticut Unfair Trade Practices Act.
 
 
 11
 On December 13, 1993, Webster filed an amended answer that raised four counterclaims against PPG. Those counterclaims were the same as Premium's first, second, third, and sixth counterclaims, set forth above.
 
 
 12
 On January 12, 1994, PPG filed a petition to compel arbitration in the Premium action.[1] This petition was filed simultaneously with five responsive pleadings, including: (1) an answer to the fifth counterclaim; (2) a motion to dismiss the fourth counterclaim for failure to state a claim; (3) a motion for partial summary judgment as to the fifth counterclaim; (4) a motion to dismiss the state law counterclaims for lack of subject matter jurisdiction; and (5) a motion to strike the counterclaims.
 
 
 13
 On January 31, 1994, PPG filed a motion entitled "Plaintiff's Motion to Stay Discovery Pending Resolution of Plaintiff's Motion to Dismiss and Motion to Strike." On February 8, 1994, the district court denied this motion.
 
 
 14
 On February 10, 1994, PPG filed an answer to the Webster counterclaims. The answer contained two affirmative defenses, neither of which mentioned arbitrability.
 
 
 15
 Also in February, the Webster action was transferred from Massachusetts to federal district court in Connecticut. In addition, the defendants moved to have the Webster and Premium actions consolidated.
 
 
 16
 Following the district court's February 8, 1994, denial of its motion to stay discovery, PPG commenced discovery in the Premium action. On April 6, 1994, PPG served interrogatories and a document production request upon Webster, as well as a subpoena duces tecum upon Webster's accountant. PPG sought information regarding Webster's attorney's fees; its lost profits and goodwill; the diminution of the business's value; and lost earnings.
 
 
 17
 On May 2, 1994, PPG filed a petition to compel arbitration in the Webster action.
 
 
 18
 On July 15, 1994, the district court denied the motion to compel arbitration in the Premium action on the grounds that PPG had waived its right to arbitrate. Judge Dorsey found that PPG had "substantially invoked the litigation process by filing the complaint, seeking a prejudgment remedy, participating in discovery, and seeking additional time to respond to the counterclaims." In addition, he noted that, contemporaneously with the petition to compel, PPG filed four dispositive motions addressed to the merits of Premium's counterclaims. Finally, Judge Dorsey noted that enough time had passed for waiver to apply, that the defendants would be prejudiced by compelled arbitration at this late stage of the litigation, and that arbitrating only the counterclaims would subject the defendants to piecemeal resolution of the entire dispute.
 
 
 19
 PPG moved for reconsideration of this order. While its motion for reconsideration was pending, discovery continued in the Premium action. In addition, both the Premium and the Webster actions were transferred to Judge Chatigny. In the Premium action, both sides moved for partial summary judgment.
 
 
 20
 In August 1994, Webster filed an updated objection to PPG's petition to compel arbitration in the Webster action, on the grounds that the denial of the petition in the Premium action should be binding on the parties.
 
 
 21
 In March 1995, Judge Chatigny denied PPG's motion for reconsideration of the district court's denial of PPG's petition to compel arbitration in the Premium action.
 
 
 22
 In August 1995, the Premium and Webster actions were consolidated before Judge Chatigny.
 
 
 23
 On March 22, 1996, Judge Chatigny denied PPG's petition to compel arbitration in the Webster action. In reaching his decision, Judge Chatigny expressly considered PPG's conduct in the Premium action as well as in the Webster action. Judge Chatigny based his conclusion that PPG waived its right to arbitrate in the Webster action on the grounds that PPG (1) failed to appeal Judge Dorsey's order denying arbitration in the Premium action; (2) engaged in discovery in the Premium action; and (3) moved for summary judgment on the Premium counterclaims. In addition, Judge Chatigny noted that "the two actions have been consolidated in this District precisely because they are so closely related as to form what is really a single controversy." Thus, he concluded that to bifurcate the actions at this stage to permit arbitration of the counterclaims in the Webster action alone would prejudice the defendants.
 
 II. DISCUSSION
 
 24
 We review de novo the district court's decision that PPG waived its right to arbitration. See Doctor's Assocs., Inc. v. Distajo, 107 F.3d 126, 130 (2d Cir.1997); Leadertex Inc. v. Morganton Dyeing & Finishing Corp., 67 F.3d 20, 25 (2d Cir.1995). We reverse the district court's factual determinations leading to its finding of waiver only if those determinations are clearly erroneous. See Doctor's Assocs., 107 F.3d at 130; Leadertex, 67 F.3d at 25.
 
 A. Law Governing Waiver
 
 25
 Federal policy strongly favors arbitration as an alternative means of dispute resolution. See Doctor's Assocs., 107 F.3d at 130; Leadertex, 67 F.3d at 24-25 (citing Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 480-81, 109 S.Ct. 1917, 1919-20, 104 L.Ed.2d 526 (1989)). This preference for arbitration "[has] led to its corollary that any doubts concerning whether there has been a waiver are resolved in favor of arbitration." Leadertex, 67 F.3d at 25 (citing Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 941-42, 74 L.Ed.2d 765 (1983)). We have often stated that "waiver of arbitration ' "is not to be lightly inferred." ' " E.g., id. (quoting Rush v. Oppenheimer & Co., 779 F.2d 885, 887 (2d Cir.1985) (quoting Carcich v. Rederi A/B Nordie, 389 F.2d 692, 696 (2d Cir.1968))).
 
 
 26
 Nonetheless, a party waives its right to arbitration when it engages in protracted litigation that prejudices the opposing party. See Doctor's Assocs., 107 F.3d at 131; Cotton v. Slone, 4 F.3d 176, 179 (2d Cir.1993); Kramer v. Hammond, 943 F.2d 176, 179 (2d Cir.1991). "[P]rejudice as defined by our cases refers to the inherent unfairness--in terms of delay, expense, or damage to a party's legal position--that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." Doctor's Assocs., 107 F.3d at 134. Incurring legal expenses inherent in litigation, without more, is insufficient evidence of prejudice to justify a finding of waiver. See id. (citing Leadertex, 67 F.3d at 26). Thus, we have found that a party waived its right to arbitration where it engaged in extensive pre-trial discovery and forced its adversary to respond to substantive motions, see Com-Tech Assocs. v. Computer Assocs. Int'l, Inc., 938 F.2d 1574, 1576-77 (2d Cir.1991), delayed invoking arbitration rights by filing multiple appeals and substantive motions while an adversary incurred unnecessary delay and expense, see Kramer, 943 F.2d at 179, and engaged in discovery procedures not available in arbitration, see Zwitserse Maatschappij Van Levensverzekering En Lijfrente v. ABN Int'l Capital Mkts. Corp., 996 F.2d 1478, 1480 (2d Cir.1993) (per curiam).
 
 
 27
 Therefore, in determining whether PPG has waived its right to arbitration, we will consider such factors as (1) the time elapsed from the commencement of litigation to the request for arbitration, (2) the amount of litigation (including any substantive motions and discovery), and (3) proof of prejudice. There is no bright-line rule, however, for determining when a party has waived its right to arbitration: the determination of waiver depends on the particular facts of each case. See Leadertex, 67 F.3d at 25; Cotton, 4 F.3d at 179; Kramer, 943 F.2d at 179.[2]
 
 B. Analysis
 
 28
 1. Time Elapsed from Commencement of Litigation
 
 
 29
 The Webster litigation commenced in November 1993, and Premium and Webster asserted counterclaims in December 1993. PPG filed its petition to compel arbitration in the Webster action on May 2, 1994. Therefore, approximately five months passed between the time the defendants asserted arbitrable claims and PPG filed its petition to compel in the Webster action. This five-month delay, by itself, is not enough to infer waiver of arbitration. See Rush, 779 F.2d at 887; Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc., 754 F.2d 457, 461 (2d Cir.1985). Rather, we must consider the delay in conjunction with (1) the amount of litigation that occurred during that period and (2) any proof that Webster was prejudiced by PPG's conduct during that period. See Leadertex, 67 F.3d at 25.
 
 2. Amount of Litigation
 
 30
 Before PPG filed its petition to compel arbitration in the Webster action on May 2, 1994, the following events occurred:
 
 
 31
 October 21, 1993: PPG filed the Premium action.
 
 
 32
 Late October 1993: Premium noticed depositions of PPG employees.
 
 
 33
 November 1, 1993: PPG moved for a protective order.
 
 
 34
 November 9, 1993: Judge Dorsey denied motion for protective order.
 
 
 35
 November 10, 1993: PPG filed Webster action.
 
 
 36
 December 3, 1993: Premium filed amended answer with counterclaims.
 
 
 37
 December 13, 1993: Webster filed amended answer with counterclaims.
 
 
 38
 December 1993: PPG wrote letters demanding arbitration.
 
 
 39
 January 12, 1994: PPG filed petition to compel in Premium action.PPG filed substantive motions in Premium action.
 
 
 40
 January 31, 1994: PPG filed motion to stay discovery.
 
 
 41
 February 1994: PPG filed answer to Webster counterclaims. Webster action transferred to Connecticut. Defendants moved to have actions consolidated. PPG commenced discovery in Premium action.
 
 
 42
 April 6, 1994: PPG requested discovery in the Premium action on Webster's damages.
 
 
 43
 As this timeline illustrates, PPG had engaged in discovery and had filed substantive motions in the Premium action prior to filing the petition to compel in the Webster action. Although the substantive motions were directed towards Premium's counterclaims, the counterclaims asserted in Webster are based on the same core facts: PPG's allegedly wrongful termination of the Jobber Agreement and the replevin of Premium's inventory and materials.
 
 
 44
 Moreover, although the discovery that PPG requested with respect to Webster's damages was requested as part of the Premium action, that information was not relevant to the Premium action; rather, it was relevant to the counterclaims asserted by Webster in the Webster action. Specifically, the interrogatories that PPG filed on April 6, 1994, sought information regarding Webster's attorney's fees, its lost profits and goodwill, the diminution of the business's value, and lost earnings. In addition, a subpoena served on Webster's accountant sought all of Webster's financial records, including tax returns for the years 1989-1993. This information was relevant to Webster's counterclaims, which sought damages for PPG's alleged bad-faith breach of the Jobber Agreement.
 
 
 45
 By engaging in discovery and filing substantive motions in the Premium action, PPG evidenced a preference for litigation that supports a finding of waiver in the Webster action. See Leadertex, 67 F.3d at 26; Kramer, 943 F.2d at 179; Com-Tech Assocs., 938 F.2d at 1576-77. It is irrelevant that this conduct occurred as part of the Premium, as opposed to the Webster, action. The actions are nearly identical; therefore, the adjudication of substantive motions in one would likely be binding in the other. In addition, the discovery sought in the Premium action was relevant to the counterclaims asserted in the Webster action.
 
 
 46
 3. Additional Evidence of Intent to Litigate
 
 
 47
 Other aspects of PPG's conduct support a finding of waiver in the Webster action. First, PPG failed to assert the defense of arbitration in its answer to either PPG's or Webster's counterclaims, which would have resulted in a clear indication of PPG's intention to invoke its arbitration rights. See Com-Tech Assocs., 938 F.2d at 1576.
 
 
 48
 Second, PPG did not file a motion to stay either the Premium or Webster actions pending arbitration. Section 3 of the Federal Arbitration Act provides that a district court, "upon being satisfied that the issue involved in such suit or proceedings is referable to arbitration under [a written] agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. The filing of this motion would have been a clear statement of PPG's intention to arbitrate. Instead, PPG chose to pursue the Premium action.
 
 
 49
 In sum, we are persuaded that PPG acted inconsistently with its contractual right to arbitration. Therefore, we now consider whether Webster was prejudiced by PPG's conduct.
 
 4. Prejudice
 
 50
 We have held that sufficient prejudice to sustain a finding of waiver exists when a party takes advantage of pre-trial discovery not available in arbitration. See Zwitserse, 996 F.2d at 1480; see also Cotton, 4 F.3d at 180 (basing finding of prejudice on delay and expense caused by defendant's extensive pre-trial litigation as well as defendant's "secur[ing] for himself the benefits of pretrial discovery that is often unavailable in an arbitral forum"); cf. Leadertex, 67 F.3d at 26 (finding that plaintiff was not prejudiced by pre-trial discovery where defendant "obtained no facts in discovery that would have been unavailable in arbitration").
 
 
 51
 Through interrogatories served on Webster in the Premium action, PPG received a vast amount of information relevant to the counterclaims asserted in the Webster action, including information regarding Webster's attorney's fees, its lost profits and goodwill, the diminution of the business's value, and lost earnings. In addition, pursuant to a subpoena duces tecum served on Webster's accountant, PPG received all of Webster's financial records from 1989-1993. Webster has not specified, however, what portion of the foregoing information ultimately would be unavailable in the arbitral forum. In Leadertex, we refused to find that the plaintiff was prejudiced by the defendant's pursuit of discovery where the plaintiff divulged no "significant information" to the defendant during the discovery process. See 67 F.3d at 26.[3]
 
 
 52
 We need not decide, however, whether the amount of discovery, by itself, is sufficient to establish prejudice in this case. Pursuant to § 16(a) of the Federal Arbitration Act, a party may take an appeal as of right from an order denying a petition to compel arbitration. See 9 U.S.C. § 16(a). We have previously held that a party's failure to take an immediate appeal, combined with that party's continued pursuit of litigation once the opportunity to appeal has passed, results in prejudice that compels a finding of waiver. See Cotton, 4 F.3d at 179-80. The district court denied PPG's motion to compel in the Premium action on July 15, 1994. PPG did not appeal that decision, choosing instead to continue with discovery and ultimately to file a motion for partial summary judgment. More significantly, to allow PPG to take the information that it received during discovery and to use that information against Webster in the arbitral forum would be inconsistent with the principle that a party waives its right to arbitration when it avails itself of judicial resources in one action, then attempts to compel arbitration in a second action involving the same facts and legal issues. See Doctor's Assocs., 107 F.3d at 133; Zwitserse, 996 F.2d at 1480.
 
 
 53
 Moreover, while PPG was waiting for a decision on its motion to compel in the Webster action, the Premium and Webster actions were consolidated before Judge Chatigny because, as Judge Chatigny stated, "they are so closely related as to form what is really a single controversy." Thus, because PPG never moved for stay of either proceeding pending the determination of its motions to compel, the cases progressed to the point where they were virtually inseparable. Allowing PPG to bifurcate the actions at this point would be unfair as well as a waste of both judicial and arbitral resources.
 
 III. CONCLUSION
 
 54
 PPG's conduct after it filed its petition to compel in the Premium action, including its conduct after that petition was denied, compels the conclusion that PPG waived its right to arbitration. Accordingly, we affirm the decision of the district court.[4]
 
 
 
 *
 The Honorable James Dickson Phillips, Jr., of the United States Court of Appeals for the Fourth Circuit, sitting by designation
 
 
 [1]
 PPG alleges that in letters dated December 15 and 27, 1993, it demanded that the counterclaims raised in the Premium and Webster actions be resolved by arbitration, pursuant to the arbitration clause contained in the Jobber Agreement. PPG further contends that Premium and Webster ignored these demands
 
 
 [2]
 Despite PPG's contention to the contrary, it is appropriate that we consider PPG's conduct in both the Premium and Webster actions to determine whether PPG waived its right to arbitrate in the Webster action. Here, the counterclaims raised in the Webster action were duplicative of four of the counterclaims raised in the Premium action. In addition, both actions arose out of the same core facts. We have previously stated that the "prior litigation of the same legal and factual issues as those the party now wants to arbitrate results in waiver of the right to arbitrate." Doctor's Assocs., 107 F.3d at 133. It is irrelevant that the prior litigation occurred as part of a separate action or in a different court. See id. at 132-33; see also Kramer, 943 F.2d at 178 (reversing district court's grant of motion to compel arbitration where defendant waived right to arbitrate by engaging in extensive litigation in state courts)
 
 
 [3]
 In that case, however, the only information that the plaintiff disclosed was the identity of two witnesses to an alleged defamatory statement and copies of 23 dye orders that the defendant already had in its possession. See Leadertex, 67 F.3d at 26. Here, PPG used the judicial process to secure a substantial amount of information that it otherwise would not have had in its possession
 
 
 [4]
 Because we agree with the district court that PPG waived its right to arbitration, we need not address Webster's additional argument that the counterclaims asserted in its amended answer are beyond the scope of the arbitration clause