The **PROVIDENT BANK, an Ohio banking corporation d/b/a/ PCFS Financial Services, a division of the Provident Bank, Plaintiff,**

v.

**Jan Bernards KABAS, Esq., a/k/a Jan B. Kabas, Esq., Mortgage Plus Equity & Loan Corp., Mpel Holdings Corp., Steven M. Latessa, Cary Wolen and Rita Guardino, Defendants.**

No. CV 00–5344.

United States District Court, E.D. New York.

April 23, 2001.

Buchanan Ingersoll, P.C. by William M. O'Connor, New York City, for Plaintiff.

Morvillo, Abramowitz, Grand, Iason & Silberberg, P.C. by Edward M. Spiro, New York City, for Defendants Mortgage Plus Equity & Loan Corp., MPEL Holdings Corp., Steven M. Latessa, Cary Wolen and Rita Guardino.

L'Abbate, Balkan, Colavita & Contini, LLP by Marian C. Rice, Garden City, NY, for Defendant Kabas.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiff, Provident Bank (the "Bank") commenced this action against a mortgage company with which the Bank has formerly done business, the mortgage company's parent corporation, three of the mortgage

company's officers (collectively the "Mortgage Company Defendants") and Jan Bernard Kabas ("Kabas"), an attorney who served as the Banks's closing agent. The Bank's complaint sets forth several causes of action sounding primarily in fraud, breach of fiduciary duty and breach of contract. Additionally, the Bank sets forth a claim pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO") and two state law causes of action.

Presently before the court is the motion of the Mortgage Company Defendants to stay this action pending arbitration. In the alternative, the Mortgage Company Defendants seek dismissal of several of the causes of action. Defendant Kabas moves to dismiss the causes of action asserted against him, or in the alternative; to stay the action against him pending arbitration.

For the reasons set forth below, the court grants the motion of the Mortgage Company Defendants to stay this action pending arbitration. The court similarly grants the motion of Defendant Kabas to stay the action as against him pending the outcome of the arbitration. No opinion is expressed regarding any motion to dismiss at this time. The court orders that this case be administratively closed, subject to reopening upon notification that the arbitration has been completed.

## BACKGROUND

### I. The Parties and Their Business Relationship

Plaintiff Provident Bank is an Ohio banking corporation with its principal place of business in Cincinati, Ohio. Provident entered into a business relationship with Mortgage Plus Equity and Loan Corporation ("Mortgage Plus"), a New York corporation located in Syosset, New York. Pursuant to the parties' agreement, the Bank agreed to lend funds, from time to time, to Mortgage Plus to permit the latter company to finance mortgages that it originated. The Bank's funding of the loans is referred to as short term financing, provided with the expectation that once the funds were obtained, Mortgage Plus would arrange for third party investors to provide permanent financing. Also named by the Bank as defendants are MPEL Holdings Corp., the parent company to Mortgage Plus as well as Steven M. Latessa, Cary Wolden and Rita Guardino, three officers of Mortgage Plus.

In addition to having a business relationship with Mortgage Plus, the Bank had a relationship with defendant Kabas. Kabas, an attorney located in Melville, New York, was to act as the Bank's closing agent in connection with loans originated by Mortgage Plus. Pursuant to that relationship, Kabas was charged with closing loans financed by the Bank, disbursement of loan funds and delivery and recording of closing documents. Loan funds were to be held in trust by Kabas in his attorney trust account pending all loan closings.

### II. The Warehouse Loan Agreement and the Closing Agreement

The rights and obligations of the parties hereto are contained in two contracts. The Warehouse Loan Agreement (entered into between the Bank and Mortgage Plus) and the Closing Agreement (entered into between the Bank and Kabas).

The Warehouse Loan Agreement states that it is entered into in the State of Ohio. Pursuant to this agreement, Mortgage Plus, as borrower, is granted the right to request the Bank, as lender, to fund loans evidenced by promissory notes and secured by mortgages, deeds of trust, or deeds to secure debt conveying interests in real estate.

Of particular relevance here is the arbitration clause of the Warehouse Loan Agreement. That clause states that all disputes "arising out of" the agreement are to be settled by arbitration in accordance with the rules of the American Arbitration Association. The arbitration clause further provides that the arbitration is to be before a single arbitrator and is to be held in the State of Ohio. Finally, the arbitration clause prohibits the arbitrator from making an award of punitive or exemplary damages to either party.

Kabas' duties as closing agent for the Bank are set forth in a document known as a "Closing Agent Agreement." That agreement, entered into in March of 1999, sets forth the duties of the closing agent as stated above. The rights and obligations of the parties to the Closing Agent Agreement are stated therein to be governed by the laws of the State of Ohio, where the closing agent expressly agrees to jurisdiction and venue.

### III.  The Complaint

As noted above, the complaint contains several causes of action. The factual predicates for each cause of action are set forth in detail in the complaint. Specifically, the complaint recites the circumstances surrounding twenty-two loan transactions involving Mortgage Plus as originator and Kabas as the closing agent.[1]

In the majority of the cases referred to in the complaint it is alleged that the mortgage funded by the Bank was improperly assigned to more than one third-party investor such that the Mortgage Company Defendants received double payment for the mortgage and at least one third party investor may not have a legal security interest in the mortgage. With respect to other mortgages, it is alleged that an mortgage was applied for but county records do not show that Mortgage Plus ever possessed or recorded the mortgage.

Common to all factual predicates for the several causes of action is the allegation of misconduct in connection with loans obtained by Mortgage Plus from the Bank pursuant to the Warehouse Loan Agreement. Such misconduct is alleged to support causes of action in: (1) breach of fiduciary duties owed by all parties to the Bank under the Warehouse Loan Agreement and the Closing Agent Agreement; (2) recission; (3) accounting and constructive trust; (4) breach of the Warehouse Loan Agreement; (5) breach of the closing agent agreement; (6) breach of the fiduciary duty of Kabas as the attorney for the Bank; (7) common law fraud; (8) negligence or wilful misconduct; (9) RICO; (10) a claim pursuant to the New York Debtor Creditor Law and (11) a claim against Kabas for breach of his duties as a notary under Section 135 of the New York Executive Law.

### IV.  The Motions

Relying on the arbitration clause in the Warehouse Loan Agreement, the Mortgage Company Defendants seek a stay of the proceedings herein in favor of arbitration. According to these defendants, Plaintiff's claims, however denominated, all fall within the category of claims "arising out of" the parties' relationship under the Warehouse Loan Agreement and are arbitrable pursuant to its terms. In the alternative, the Mortgage Company Defendants argue that Plaintiff's complaint is no more than a simple breach of contract claim and

---

1.  Kabas is not named as the closing agent in one of the loan transactions referred to in the complaint.

all other claims against them must be dismissed for failure to state a claim.

Kabas, who is not a party to the Warehouse Loan Agreement, seeks a stay of any claims against him pending the outcome of an arbitration between the Mortgage Plus Defendants and the Bank. The stay is sought pursuant to this court's inherent power to control its docket and to avoid inconsistent determinations and promote judicial economy. In the alternative, Kabas seeks dismissal of the complaint for failure to state a claim.

## DISCUSSION

### I. The Federal Arbitration Act

■ The Federal Arbitration Act (the "Act" or the "FAA") was enacted to promote the enforcement of private agreements to arbitrate. *See Chelsea Square Textiles, Inc. v. Bombay Dyeing and Mfg. Co., Ltd.,* 189 F.3d 289, 294 (2d Cir.1999); *Infinity Industries, Inc. v. Rexall Sundown, Inc.,* 71 F.Supp.2d 168, 169 (E.D.N.Y.1999). The Act provides that written agreements to arbitrate contained in contracts evidencing a transaction involving interstate commerce shall be valid, irrevocable and enforceable. *See* 9 U.S.C. § 2. The Act provides a mechanism for district courts (that would have jurisdiction over a dispute in the absence of an agreement to arbitrate), to stay judicial proceedings pending arbitration and, in some instances, enter an order compelling the arbitration to proceed. *See* 9 U.S.C. §§ 3, 4.

Section 3 of the Act gives courts the power to stay an action upon being satisfied that the issue before the court is referable to arbitration. 9 U.S.C. § 3. Section 4 of the FAA allows a party to petition a court to compel arbitration and sets forth the procedures for such petition. Pursuant to section 4 of the Act, the court is empowered to hear the parties, and "upon being satisfied" that the making of the agreement to arbitrate is not at issue, the court is to direct the parties to proceed to arbitration in accordance with the terms of the agreement. 9 U.S.C. § 4

■ The FAA power to compel arbitration is limited in terms of venue. Specifically, the arbitration may be ordered to proceed only within the judicial district in which the petition to compel has been filed. 9 U.S.C. § 4; *see Ryan v. Allen,* 992 F.Supp. 152, 154 (N.D.N.Y.1998); *Mosca v. Doctors Assoc., Inc.,* 852 F.Supp. 152, 156 n. 1 (E.D.N.Y.1993); *Couleur Internat'l., Ltd. v. Saint–Tropez West,* 547 F.Supp. 176, 177–78 (S.D.N.Y.1982). Where an agreement to arbitrate specifies a venue outside of the district in which the petition is filed, no order to compel may be entered; only a stay is available. *See, e.g., Ryan,* 992 F.Supp. at 154–55.

### II. Standards Applicable to Requests to Stay or Compel Arbitration

■ When faced with a request for a stay or to compel arbitration, two questions are before the court: (1) whether the parties have agreed to arbitrate and if so, (2) whether the scope of the agreement to arbitrate encompasses the claims asserted. *Chelsea Square Textiles,* 189 F.3d at 294. A party objecting to the existence of the agreement to arbitrate may raise by the same objections available when denying the existence of a contract. 9 U.S.C. § 2. Such matters are resolved pursuant to state contract law. *Chelsea Square Textiles,* 189 F.3d at 295–96.

■ When considering whether a particular dispute falls within an agreement to arbitrate, the strong federal policy in favor of arbitration requires courts to resolve any doubts regarding the scope of arbitrable issues in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr.*

*Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Oldroyd v. Elmira Savings Bank, FSB*, 134 F.3d 72, 76 (2d Cir.1998); *Chelsea Square Textiles*, 189 F.3d at 294. Arbitration is to be compelled "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *David L. Threlkeld & Co., Inc. v. Metallgesellschaft Ltd.*, 923 F.2d 245, 250 (2d Cir.1991), quoting, *McAllister Bros., Inc. v. A. & S. Transp. Co.*, 621 F.2d 519, 522 (2d Cir.1980).

Arbitration clauses couched in language encompassing all disputes "arising under" or "in connection with" an agreement are referred to as the "prototypical broad" arbitration provision justifying a presumption in favor or arbitration. *Oldroyd*, 134 F.3d at 76. If the plaintiff's allegations "touch matters covered by the parties' . . . agreements then those claims must be arbitrated, whatever the legal labels attached to them." *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 75 (2d Cir. 1997), quoting, *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 846 (2d Cir.1987).

III. *Waiver Of Arbitration*

The policy favoring arbitration applies whether the issue before the court is the scope of the agreement to arbitrate or related issues such as waiver, delay or other defense to arbitration. *Oldroyd*, 134 F.3d at 76; *see Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25, 103 S.Ct. 927. The question of waiver of arbitration is ordinarily presented as a defense to an arbitrator. Where, however, the party seeking arbitration has already participated in the litigation, waiver is a matter that may be decided by the district court. *In re S & R Company of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80, 83 (2d Cir. 1998).

A waiver of arbitration is not to be lightly inferred. *PPG Industries, Inc. v. Webster Auto Parts Inc.*, 128 F.3d 103, 107 (2d Cir.1997). Generally, a party is deemed to have waived the right to seek arbitration where he "engages in protracted litigation that results in prejudice to the opposing party." *S & R Co.*, 159 F.3d at 83, quoting, *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 25 (2d Cir.1995). Facts to be considered when determining whether a waiver has occurred include: (1) the time elapsed from the commencement of the litigation to the request for arbitration; (2) the amount of litigation (including exchanges of pleadings, and any substantive motions, and discovery), and; (3) proof of prejudice, including taking advantage of pre-trial discovery not available in arbitration, delay and expense. *S & R Co.*, 159 F.3d at 84; *W & S Erectors, Inc. v. Metropolitan Steel Industries*, 2000 WL 533094 * 3 (E.D.N.Y. April 27, 2000).

Neither the passage of time, standing alone, nor the incurring of legal expenses inherent in litigation, without more, are sufficient to support a finding of waiver. *PPG Industries*, 128 F.3d at 107–08. In *PPG Industries*, for example, the court held that a five month delay in asserting the right to arbitrate, standing alone, did not require a finding of waiver. *PPG Industries*, 128 F.3d at 108. Instead, the Second Circuit held that any delay must be considered in conjunction with the litigation activity that took place during this time period, along with any proof that the party seeking to avoid arbitration suffered prejudice. *Id.* at 109; *see W & S Erectors, Inc. v. Metropolitan Steel Industries*, 2000 WL 533094 * 3 (E.D.N.Y. April 27, 2000) (waiver found only if party engages in "protracted litigation" that prejudices other party).

**IV.** *Disposition of the Mortgage Defendants' Motion*

**A.** *Agreement to Arbitrate*

The court's initial inquiry, whether the parties have entered into an agreement to arbitrate, is not open to serious discussion. The parties cannot dispute that the Bank and Mortgage Plus have entered into an agreement to arbitrate, as evidenced by their execution of the Warehouse Loan Agreement. As a transaction involving the transfer of funds interstate, application of the FAA is clear. 9 U.S.C. § 2; *see Flour Daniel Intercontinental, Inc. v. General Elect. Co.*, 1999 WL 637236 *3 (S.D.N.Y. August 20, 1999) (interstate commerce requirement in FAA construed broadly).

■ Although neither the parent company of Mortgage Plus nor the Mortgage Plus officers are signatories to the Warehouse Loan Agreement, they are sued as officers and agents of Mortgage Plus. There is no allegation that any of the officers acted outside of their capacity as officers of Mortgage Plus when dealing with the Bank. Similarly, the Bank seeks to pierce the corporate veil in holding the parent company of Mortgage Plus liable for the actions of Mortgage Plus and its officers.

Under these circumstances all Mortgage Plus Defendants are bound by and entitled to avail themselves of the provisions of the agreement to arbitrate. *See Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 668–69 (2d Cir.1997) ("employees or disclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement"); *Thomson–CSF, S.A. v. American Arbitration Ass'n.*, 64 F.3d 773, 776 (2d Cir.1995) (recognizing theories for holding non-signatories bound by arbitration clause including agency and veil-piercing/alter ego theories); *see also Landis v. Finova Capital Corp.*, 2000 WL 546985 *3 (S.D.N.Y. May 3, 2000) (employees sued in their capacities as agents or employees of party to arbitration agreement subject to arbitration clause); *Creative Securities Corp. v. Bear Stearns & Co.*, 671 F.Supp. 961, 968 n. 11 (S.D.N.Y. 1987) (same), *aff'd.*, 847 F.2d 834 (2d Cir. 1988).[2]

**B.** *The Scope of the Arbitration Agreement*

■ The arbitration clause contained in the Warehouse Loan Agreement states, in pertinent part, that all disputes "arising out of" the agreement are to be settled by arbitration. As such, it is the "prototypical" broad arbitration clause discussed above that gives rise to a presumption of arbitrability. *See Oldroyd*, 134 F.3d at 76. Upon examination of the factual underpinnings of Plaintiff's claims, as set forth clearly in the complaint, the court is satisfied that all claims are within the scope of the broad arbitration clause. Each claim, however denominated, arises out of an alleged breach of duties imposed by the Warehouse Loan Agreement and are therefore arbitrable.

■ The court rejects the notion, advanced by the Bank, that it is somehow inequitable to require the Bank to litigate its RICO claims in the arbitral forum. Plaintiff readily acknowledges that RICO claims, in general, are arbitrable, *see Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 227, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). Arbitration

---

2. Even if the individual officers and parent company were not entitled to seek a stay pursuant to the arbitration clause, the court would nonetheless grant these parties a stay of this action pending arbitration pursuant to the court's inherent power to enter such an order.

is resisted on the ground that the arbitration clause prohibits the arbitrator from awarding treble damages that would otherwise be available in a federal RICO lawsuit.

Neither party to the Warehouse Loan Agreement chose to exempt any particular type of claim, including RICO claims, from the arbitration agreement and the court will not infer any intent to exempt such claims. Indeed, the limitation on the arbitrator's power to award punitive damages is more properly construed as an intent to specifically insulate both parties from such claims. Allowing the Bank to proceed with a RICO claim in federal court would directly contradict the parties' stated intent to avoid the imposition of treble and/or punitive damages for claims arising out of the parties' business relationship. *See Appel v. Kidder, Peabody & Co., Inc.*, 628 F.Supp. 153, 158 n. 26 (S.D.N.Y.1986) (allowing party to avoid arbitration on ground that arbitrator lack authority to award punitive damages would result in unlawful ability to unilaterally avoid an otherwise arbitration clause).

### C. There Has Been No Waiver of Arbitration

■ The court also rejects the argument that the Mortgage Defendants have somehow waived the right to arbitrate. Acceptance of the Bank's argument would require a party to seek arbitration the moment it is put on notice of any claim against it. There is no support for such a broad construction of the waiver of the right to arbitrate and the sole case relied upon by the Bank does not hold otherwise. *See American Home Assurance Co. v. Vecco Concrete Constr. Co., Inc.*, 629 F.2d 961 (4th Cir.1980) (refusing to find a waiver of arbitration where party did not seek stay in favor of arbitration until party was

named in lawsuit). In fact, the law is the opposite.

As discussed above, a waiver of arbitration is not to be lightly inferred. *Oldroyd*, 134 F.3d at 76; *PPG Industries, Inc.*, 128 F.3d at 107. Even active participation in litigation over a period of months may not lead to a waiver of arbitration. Here, defendants sought enforcement of the parties' agreement to arbitrate shortly after the Bank commenced litigation. There was no obligation to seek any "preemptive" arbitration prior to commencement of this lawsuit. In short, there was no waiver of the right to arbitrate the parties' dispute.

### V. Disposition of Kabas' Motion

The source of the Banks' claims against Kabas is the parties' relationship pursuant to the Closing Agent Agreement. The Bank claims breach of that agreement as well as breach of various fiduciary duties arising out of that agreement and out of Kabas' duties as an attorney and notary for the Bank. Kabas has entered into no agreement to arbitrate any dispute with the Bank. Accordingly, the FAA does not apply and cannot be relied upon to stay the Bank's claims against Kabas.

■ In cases where the FAA is inapplicable, the court nonetheless has the power to stay proceedings in favor of arbitration. Such power is grounded in the court's inherent ability to "control the disposition of causes on its docket with economy of time and effort for itself, for counsel and for litigants." *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 76 (2d Cir.1997) (holding that, on facts of the case, it would be an abuse of district court's discretion to refuse to stay litigation while arbitration proceeds) (citations omitted).

■ When considering whether to stay a case in favor of arbitration the court considers the expense and inconvenience of

parallel litigation as well as the possibility of inconsistent determinations. A party ought not be able to avoid arbitration by suing a related party "with which it has no arbitration agreement in the hope that the claim will be adjudicated first and have preclusive effect on the arbitration." *WorldCrisa,* 129 F.3d at 76, quoting, *IDS Life Ins. Co. v. SunAmerica, Inc.,* 103 F.3d 524, 530 (7th Cir.1996). Additionally, where arbitrable and non-arbitrable claims arise out of the same set of facts, the arbitration may decide the same facts at issue in the litigation making a stay appropriate. *See e.g., Aekyung Co., Ltd., v. Intra & Co., Inc.,* 2000 WL 1521202 * 2 (S.D.N.Y. October 13, 2000); *O'Dean v. Tropicana Cruises Internat'l, Inc.,* 1999 WL 335381 *3 (S.D.N.Y. May 25, 1999).

█ Application of these principles here leads the court to conclude that a stay of the entire matter is appropriate. The claims against Kabas arise out of the same set of facts as those forming the Bank's claim against the Mortgage Company Defendants. Factually, Kabas is tied into the alleged wrongdoing by virtue of the fact that he acted as the closing agent in connection with the loans detailed in the complaint. Litigation of these claim in this forum would lead to duplication of effort and a possibility of inconsistent determinations. Because of these facts and the fact that the majority of the Bank's claims are made primarily against the Mortgage Company Defendants, the court holds that it is prudent to stay the judicial proceedings against Kabas pending the outcome of the arbitration involving the Mortgage Company Defendants.

It appears that the Mortgage Company Defendants are eager to proceed to arbitration and will do nothing to impede the progress of the arbitration. If this does not prove to be the case, an application for relief from the stay may be entertained.

*See WorldCrisa,* 129 F.3d at 76 (party may move to vacate stay is other party impedes arbitration or if arbitration does not conclude within a reasonable time).

VII. *The Court Cannot Compel Arbitration*

The court notes, and the parties agree, that the agreement to arbitrate calls for arbitration in the State of Ohio. Under the FAA, this court is not empowered to compel arbitration outside of this district and will enter no such order. *See* 9 U.S.C. § 4.

The court recognizes, however, that the Mortgage Company Defendants, noting their presence in this state and the Bank's election to pursue litigation here, have offered to arbitrate the dispute in New York. The Bank, however, has not taken a position as to whether it will agree to a New York arbitration. Instead, the Bank states only that the arbitration may take place here "if Provident prefers." Whether or not the Bank "prefers" a New York arbitration, however, is not stated. If Provident is willing to agree to arbitrate this dispute in New York, it should make that intent known to defendants and the parties may thereafter enter into an appropriate stipulation. In the meantime, this court will not order that any arbitration proceed. Instead, the court orders only that the Clerk of the Court close this case subject to re-opening upon being advised that the arbitration has come to a conclusion.

*CONCLUSION*

Defendants' motions are granted to the extent that this case is stayed pursuant to the Federal Arbitration Act and the court's inherent power. No opinion is expressed regarding the merits of the issues raised in connection with any motion to dismiss at this time. The Clerk of the Court is directed to terminate all motions

herein and to close this case subject to re-opening upon being advised that the arbitration has come to a conclusion.

SO ORDERED.