**BIG Y FOODS, INC., Plaintiff,**

v.

**CONNECTICUT PROPERTIES TRI–TOWN PLAZA, LLC, Defendant.**

**No. CIV.3:97CV2501 (CFD).**

United States District Court,
D. Connecticut.

Jan. 6, 1998.

John C. Yavis, Jr., Everett E. Newton, Murtha, Cullina, Richter & Pinney, Hartford, CT, for plaintiff.

Mark E. Block, Lester J. Arnold III, O'Brien, Shafner, Stuart, Kelly & Morris, P.C., Norwich, CT, for defendant.

### RULING ON PETITION TO COMPEL ARBITRATION

DRONEY, District Judge.

Plaintiff Big Y Foods, Inc. filed this petition to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, ("FAA"). For the reasons stated below, plaintiff's petition is granted.

### FINDINGS OF FACT [1]

1. Big Y Foods, Inc. ("Big Y") is a Massachusetts corporation which operates supermarkets in Connecticut and Massachusetts with its principal place of business in Massachusetts.

2. Connecticut Properties Tri–Town Plaza, LLC ("Tri–Town"), is a Connecticut limited liability company with its principal place of business in Connecticut.

3. Big Y and Tri–Town are successors in interest to a lease dated May 31, 1966 (the "Lease"). The Lease covers certain premises located in the shopping center known as Tri–Town Plaza in the towns of Seymour and Ansonia, Connecticut. Tri–Town is the landlord/owner and Big Y is a tenant/lessee. The lease was drafted by Tri–Town's predecessor in interest.

---

[1] These findings are based on the evidence presented at the hearing held on December 17, 1997.

4. The Lease, as amended, is scheduled to terminate on December 31, 2001.

5. Under the Lease, Big Y, the Lessee, pays approximately $12,000 per month in rent to Tri–Town, the Lessor. Big Y is current on all payments due under the Lease, including rent.

6. The Lease includes the following paragraphs, all of which were in full force and effect at all pertinent times herein:

7(m) That if it [lessee] shall abandon or vacate said premises before the end of the term of this lease, or shall suffer any installments of rent to be in arrears for ten (10) days after notice thereof of [sic] if default be made on the part of the Lessee in any of the other covenants or agreements herein contained, the Lessor, at its option and without notice, may enter said premises, remove any signs and property of said Lessee therefrom and relet the same as the Lessor may see fit without thereby avoiding or terminating this lease, and if a sufficient sum shall not be realized from such reletting (after payment of all costs and expenses of such reletting and the collection of rent accruing therefrom) each month to equal the monthly rental stipulated to be paid by the Lessee under the provisions of this lease, then the Lessee shall pay such deficiency each month upon demand therefor and such rights of the Lessor or any action taken by the Lessor hereunder shall not prevent the Lessor from pursuing any other remedy or action which the Lessor might otherwise have the right to take under the terms of this lease or by law.

8(a) That if the Lessee shall make default in payment of the rents reserved hereunder for a period of ten (10) days after written notice after any of the same shall become due and payable aforesaid, or if default shall be made by the Lessee in any of the other covenants and agreements herein contained to be kept and fulfilled on the part of the Lessee for a period of ten (10) days after written notice of such default is given by the Lessor to the Lessee without action by the Lessee to remedy such default and continuance of such action to remedy such default to conclusion with reasonable diligence, or if the Lessee shall be declared insolvent or adjudicated a bankrupt, or if a receiver shall be appointed for its business or its assets and the appointment of such receiver is not vacated within sixty (60) days after such appointment, or if it shall make an assignment for the benefit of its creditors, or if the Lessee's interest · herein shall be sold under execution, then and forthwith thereafter the Lessor shall have the right, at its option and without prejudice to its rights hereunder, to terminate this lease and to re-enter and take possession of said leased premises, or the Lessor, without such re-entry, may recover possession of said leased premises in the manner prescribed by the statute relating to summary process, and any demand for rent, re-entry for condition [sic] broken, and any and all notices to quit, or other formalities of any nature, to which the Lessee may be entitled, in such event, are hereby specifically waived; and that after default made in any of the covenants contained herein, the acceptance of rent or failure to re-enter by the Lessor shall not be held to be a waiver of its right to terminate this lease, and the Lessor may re-enter and take possess [sic] thereof the same as if no rent had been accepted after such default. In addition, thereto, on the happening of any of the events hereinabove referred to, the Lessor may, at its option, declare immediately due and payable all the remaining installments of rent herein provided for and such amount, less the fair rental value of the premises, for the [sic] residue of said term shall be construed as liquidated damages and shall constitute a debt provable in bankruptcy or receivership.

8(g) That if there shall be any controversy between the Lessor and the Lessee arising out of the within lease, such controversy shall be referred to Arbitration. Each party shall name an arbitrator within ten (10) days after written notice from the other that such other party requests any arbitration of any such controversy. If the two (2) arbitrators so appointed shall not agree, they shall select a third arbitrator, and the decision of any two (2) of them shall be binding upon the Lessor and the

Lessee. The cost of such arbitration shall be borne by the Lessor and the Lessee equally.

7. Until November 10, 1997, Big Y operated a supermarket on the leased premises at Tri–Town Plaza.

8. On November 10, 1997, Big Y closed its store at Tri–Town. Big Y asserts that the closing was not an abandonment or a vacating of the premises, but rather was necessary to remodel the store and that it intends to reopen the store in March, 1998.

9. On or about November 20, 1997, Tri–Town served Big Y with a Notice to Quit pursuant to paragraph 8(a) of the Lease, alleging that Big Y has "no right or privilege to occupy such premises or in the alternative any such right or privilege [it] originally had to occupy such premises has terminated." The Notice to Quit demanded that Big Y quit possession or occupancy of the premises by November 30, 1997.

10. The principal basis for the issuance of the Notice to Quit was Tri–Town's belief that Big Y had breached the Lease by vacating and/or abandoning the leased premises in violation of paragraph 7(m) of the Lease. Tri–Town also maintains that Big Y breached the Lease by erecting improper signs and not repairing damage to the premises.

11. On or about November 20, 1997, Big Y served Tri–Town with a demand for arbitration of the issues raised in Tri–Town's Notice to Quit, pursuant to paragraph 8(g) of the Lease. Big Y also named its arbitrator and requested that Tri–Town designate an arbitrator.

12. Tri–Town has declined to name an arbitrator or proceed with arbitration on the issues raised in this petition and has filed an action in the Connecticut Superior Court to enforce its Notice to Quit.

13. On December 1, 1997, Big Y filed this petition to compel arbitration pursuant to the FAA.

14. The amount in controversy exceeds $75,000, exclusive of interest and costs.

15. The lease evidences a transaction or transactions involving interstate commerce.

## CONCLUSIONS OF LAW

██ Under the Federal Arbitration Act, when a party refuses to submit a dispute to arbitration, the court must decide (1) whether there is an agreement to arbitrate, and (2) whether the dispute falls within the arbitration agreement.[2] *United States Fire Ins. Co. v. National Gypsum Co.*, 101 F.3d 813, 816 (2d Cir.1996). Tri–Town does not dispute the validity of the arbitration agreement as part of the Lease. In fact, the parties have stipulated that an arbitration is scheduled to resolve other matters arising from the Lease.

The issues pending before the court are (1) whether this dispute falls within the arbitration clause of the Lease, and (2) if so, whether Tri–Town may elect to proceed with a summary process action rather than arbitration. Big Y relies on paragraph 8(g) of the Lease for its position that this dispute must be submitted to arbitration:

That if there shall be any controversy between the Lessor and the Lessee arising out of the within lease, such controversy shall be referred to arbitration. Each party shall name an arbitrator within ten (10) days after written notice from the other that such party requests any arbitration of any such controversy. If the two (2) arbitrators so appointed shall not agree, they shall select a third arbitrator, and the decision of any two (2) of them shall be binding upon the Lessor and the Lessee. The costs of such arbitration shall be borne by the Lessor and the Lessee equally.

Lease, ¶ 8(g).

Tri–Town argues that Big Y has violated the Lease by vacating and/or abandoning the leased premises, placing signs on the exterior of the leased premises, and failing to maintain the premises in good repair. Tri–Town contends that, pursuant to paragraph 8(a) of

---

**2.** The jurisdictional requirements of the FAA have been met. *See* Findings of Fact, *supra* at

¶¶ 1, 2, 14 and 15.

the Lease, it has the option to resort to summary process rather than arbitration to resolve these disputes. Paragraph 8(a) provides in pertinent part:

> [I]f the default shall be made by the Lessee in any of the other covenants and agreements herein contained to be kept and fulfilled on the part of the Lessee for a period of ten (10) days after written notice of such default is given by the Lessor to the Lessee without action by the Lessee to remedy such default ... the Lessor shall have the right, at its option and without prejudice to its rights hereunder, to ... recover possession of said leased premises in the manner prescribed by the statute relating to summary process....

Lease, ¶ 8(a). Tri–Town argues that this paragraph shows "a clear and unequivocal intent to carve out from arbitration matters involving termination of the lease by default or non-payment of rent and the damages flowing therefrom." *See* Def.'s Obj. to Petition to Compel Arbitration and Motion for Temporary Restraining Order [doc. # 8], at 11.

■ The arbitration clause contained in paragraph 8(g) uses "the typically broad language that makes arbitrable all disputes 'arising out of' or 'related to' the contract or its breach." *WorldCrisa v. Armstrong*, 129 F.3d 71, 74 (2d Cir.1997). In accordance with the strong federal policy favoring arbitration, the Lease's broad arbitration agreement creates a presumption of arbitrability. *Id.* "[A]ny doubts concerning the scope of the arbitrable issues should be resolved in favor of arbitration unless it can be said with positive assurance that the arbitration clause does not cover the dispute." *Id.* (internal quotations omitted); *see also Moses Cone Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983). Neither paragraph 8(a) nor any other provision of the Lease sets forth any clear exception to the mandate of arbitration set forth in paragraph 8(g).

■ In light of the federal policy favoring arbitration and the broad arbitration agree-

ment contained in the Lease, the parties must submit to arbitration the threshold issue of whether a default has occurred. *See e.g., McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825, 832 (2d Cir.1988) ("If a court concludes that a clause is a broad one, then it will order arbitration and any subsequent construction of the contract and of the parties' rights and obligations under it are within the jurisdiction of the arbitrator"). If the arbitrators find a default has occurred, the Lessor may then institute a summary process action.

■ This result is consistent with the rules of construction applied by Connecticut courts [3] requiring that "[e]very provision of the contract must be given effect if it can reasonably be done, because parties ordinarily do not insert meaningless provisions in their agreements." *Connecticut Co. v. Division*, 147 Conn. 608, 164 A.2d 413, 418 (1960); *Robinson v. Weitz*, 171 Conn. 545, 370 A.2d 1066, 1069 (1976). Interpreting 7(m) and 8(a) as allowing Tri–Town to resort to summary process only after the arbitrators have determined that a default has occurred gives effect to each of these provisions, as well as paragraph 8(g).

According to Tri–Town, paragraphs 7(m) and 8(a) give it the option to proceed directly to summary process whenever a significant default involving potential termination of the Lease occurs. Adoption of Tri–Town's position would eviscerate the language of 8(g) mandating that *any* controversy arising out of the Lease be referred to arbitration. Such an interpretation would typically limit those matters that would be referred to arbitration under the Lease to minor breaches that did not rise to the level of a termination, despite the absence of language limiting the scope of the arbitration clause. To the extent that the arbitration clause and the clause permitting resort to summary process conflict, the policy favoring arbitration prevails.

Tri–Town also maintains that the "at its option" language in paragraphs 8(a) and 7(m)

---

**3.** The parties agree that the terms of the Lease should be construed according to Connecticut

state law.

means that Tri–Town has the choice to proceed to arbitration or summary process. This language, however, does not provide a choice between summary process and arbitration, but rather a choice of remedies, including re-entry and return of possession for certain defaults. The "at its option" language is internal to paragraphs 8(a) and 7(m). Paragraph 8(g)—the arbitration clause—sets forth no option or exception for summary process. Tri–Town does not have the "option" of resorting to summary process until after an arbitration panel, in compliance with paragraph 8(g), has found that a default has occurred.

■ The court's conclusions are also supported by Connecticut law which requires any ambiguities in a contract to be construed against the party who drafted the lease. *See, e.g., Simses v. North American Co. for Life and Health Ins.,* 175 Conn. 77, 394 A.2d 710, 714 (1978). Tri–Town's managing partner testified that Tri–Town's predecessor in interest drafted the lease. To the extent that the provisions under paragraph 8(g) could be construed to conflict with paragraphs 7(m) and 8(a), rendering them equally susceptible to two different meanings, the construction favoring the lessee is adopted.

## CONCLUSION

In light of the foregoing, the plaintiff's Petition to Compel Arbitration is GRANTED [doc. # 1]. Plaintiff is directed to advise the court if there is a need to decide the pending motion for a preliminary injunction. If such a decision is necessary to enforce the order of the court, a hearing will be scheduled.

It is so ordered.