**Karen DELAHUNTY, Plaintiff,**

v.

**MORGAN STANLEY DEAN WITTER f/n/a/ Dean Witter Reynolds, Inc., Defendant.**

No. 3:98–CV–1688 (WWE).

United States District Court, D. Connecticut.

July 1, 1999.

Thomas W. Bucci, Willinger, Shepro, Tower & Bucci, Bridgeport, CT, for plaintiff.

Kristan Peters–Hamlin, Epstein, Becker & Green, P.C., Stamford, CT, Ronald M. Green, Epstein, Becker & Green, P.C., New York City, for defendant.

### RULING ON MOTION TO DISMISS OR IN THE ALTERNATIVE TO STAY AND COMPEL ARBITRATION

EGINTON, Senior District Judge.

### INTRODUCTION

In her complaint plaintiff Karen Delahunty ("Delahunty"), advances three claims against her former employer, Morgan Stanley Dean Witter ("MSDW"). The first claim is pursuant to Title VII and alleges gender discrimination. The second claim is that the termination of her employment was the result of the defendant's retaliation against her for exposing the unlawful transactions of one of its managers. The third claim is for the intentional infliction of emotional distress.

Defendant has moved to dismiss or, in the alternative, to stay the action and compel arbitration.

### STATEMENT OF FACTS

The Court relies upon allegations set forth in the complaint and in the motion papers, as deemed necessary to an understanding of the issues raised in, and decision rendered on, this Motion.

On or about January 17, 1996, the plaintiff accepted employment with the defendant as an account executive trainee. In this position, plaintiff participated in, and successfully completed, defendant's training program.

Delahunty then commenced work as a broker for defendant at its New Haven branch. Defendant terminated her employment approximately one and one-half years later, citing her lack of productivity.

Plaintiff alleges that she was the object of unlawful gender discrimination from the commencement of her employment and the same resulted in her termination. She asserts that all the male brokers were given preferable assignments and aid in the marketing of defendant's products, while she was refused such help.

Plaintiff further alleges that, in the course of her employment, she discovered that a former broker at defendant had made unauthorized and illegal transactions in a client's account. Plaintiff reported this information to her branch manager, who attempted to conceal this unlawful activity. Plaintiff, upon learning of this, reported it to the defendant's regional manager. As a result, defendant replaced plaintiff's branch manager. Plaintiff contends that immediately following this, she became the subject of unlawful retaliation.

Finally, plaintiff asserts that the method of her termination was extreme and outrageous, resulting in extreme emotional distress. The new branch manager terminated her during a meeting in the presence of the entire office personnel in which he screamed and yelled at plaintiff and told her to leave the premises in twenty minutes and that she could not use the tele-

phone. Plaintiff next alleges that defendant, with no explanation, froze her own two personal investment accounts, as well as the account of her 83 year-old mother, solely to harass plaintiff.

At the commencement of her employment, plaintiff signed a Form U–4, which is a standard form within the securities industry, in which she agreed to arbitrate any disagreement with defendant. She also signed an Account Executive Trainee Employment Agreement which, like the Form U–4, required any controversy or claim between herself and defendant to be arbitrated before either the National Association of Securities Dealers, Inc. or the New York Stock Exchange, Inc., as defendant elected.

Following her termination, plaintiff filed an employment discrimination complaint with both the Connecticut Commission on Human Rights and Opportunities ("CCHRO") and the Equal Employment Opportunity Commission ("EEOC"). On June 21, 1998, plaintiff received a right to sue letter from the EEOC. This litigation followed.

## LEGAL ANALYSIS

### I. The Standards of Review

#### A. Federal Rule of Civil Procedure 12(b)(1)

A Motion to Dismiss under Rule 12(b)(1) "challenges the court's statutory or constitutional power to adjudicate the case ..." and "typically ... alleges that the federal court lacks either federal question or diversity jurisdiction over the action." 2A James W. Moore et al., Moore's Federal Practice, ¶ 12.07, at 12–49 (2d ed.1994) quoted in Bleiler v. Cristwood Contracting Co., Inc., 868 F.Supp. 461, 464 (D.Conn. 1994), affirmed in part, reversed in part on other grounds, 72 F.3d 13 (2d Cir.1995).

In considering a motion to dismiss under Rule 12(b)(1), the court construes the complaint broadly and liberally in conformity with the substantial justice principle set out in Federal Rule of Civil Procedure 8(f).

See 5A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1350, at 218–19 (1960 & Supp.1991). In ruling on such a motion, the court is to consider allegations of the complaint as true. Zellars v. Liberty Nat. Life Ins. Co., 907 F.Supp. 355 (M.D.Ala.1995); Hart v. Mazur, 903 F.Supp. 277 (D.R.I.1995).

#### B. Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) should be granted only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). "The function of a motion to dismiss is 'merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof.'" Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir.1984) quoting Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980).

Pursuant to a Rule 12(b)(6) analysis, the Court takes all well-pleaded allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff. Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir.1996). See also Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (Federal Rules reject approach that pleading is a game of skill in which one misstep by counsel may be decisive of case). Applying these standards, the Court will deny that part of the present motion seeking dismissal of the complaint.

### II. The Arbitration Claim

Defendant contends that this case is governed by the Federal Arbitration Act ("FAA" or the "Act"), 9 U.S.C. §§ 1 et seq. and the Code of Arbitration Procedure of the National Association of Securities Dealers, Inc. ("NASD"). Its alternative

234

motion to stay and compel arbitration is based upon that Act, the Code and documents which defendant claims were willingly and knowingly signed by plaintiff at the commencement of her employment, acknowledging same.

Section 2 is the primary substantive provision of the Act, declaring that a written agreement to arbitrate "in any maritime transaction or a contract evidencing a transaction involving commerce ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

■ Because federal policy favors arbitration, courts are required to construe arbitration clauses as broadly as possible and resolve any doubts regarding arbitrability in favor of arbitration. *S.A. Mineracao Da Trindade–Samitri v. Utah Intern., Inc.*, 745 F.2d 190, 194 (2d Cir.1984); *Big Y Foods, Inc. v. Connecticut Properties Tri–Town*, 985 F.Supp. 232, 235 (D.Conn. 1998) *citing WorldCrisa v.. Armstrong*, 129 F.3d 71, 74 (2d Cir.1997). The Supreme Court has held that the FAA "leaves no place for the exercise of discretion by a district court but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) (emphasis in original). *See* 9 U.S.C. §§ 3, 4.

■ As previously noted, plaintiff signed a Form U–4, agreeing to arbitrate "any dispute, claim or controversy that may arise" between her and defendant. In addition, plaintiff signed the Account Executive Trainee Employment in which she again agreed to arbitrate all claims and controversies arising out of her employment with, or termination from, Dean Witter. The Court finds that both agreements are enforceable and binding. "Every provision of the contract must be given effect if it can reasonably be done, because parties ordinarily do not insert meaningless provisions in their agreements." *Connecticut Co. v. Division 425*, 147 Conn. 608, 617, 164 A.2d 413 (1960).

Within this Circuit, many courts have ordered employment discrimination claims to be arbitrated pursuant to Form U–4 agreements. *See, e.g., Fleck v. E.F. Hutton Group, Inc.*, 891 F.2d 1047 (2d Cir. 1989) (reversing district court's denial of motion to compel arbitration, court remanded with instructions to order arbitration for all claims that involve employment relationship; plaintiff had signed Form U–4); *Desiderio v. NASD, Inc.*, 2 F.Supp 2d 516 (S.D.N.Y.1998) (compelling plaintiff's Title VII claims because plaintiff signed Form U–4;) *Schuetz v. CS First Boston Corp.*, 1997 WL 452392 (S.D.N.Y. Aug.8, 1997) (same); *Berger v. Cantor Fitzgerald Securities*, 967 F.Supp. 91 (S.D.N.Y.1997) (court granted motion to compel arbitration of plaintiff's Title VII, ADA and New York State antidiscrimination causes of action).

Not only did plaintiff execute the Form U–4, she also agreed to arbitration when she signed her trainee employment contract. She must arbitrate her Title VII and her unlawful discharge claims.

### CONCLUSION

For the reasons set forth herein, that part of defendant's Motion seeking dismissal [Doc. No. 7] is DENIED. Defendant's alternative motion to stay the action and compel arbitration [Doc. No. 7] is GRANTED as to the Title VII and unlawful discharge claims. The Court will main-

tain jurisdiction over the claim of intentional infliction of emotional distress, but trial of that cause is STAYED pending resolution of the arbitrable issues.