08-4666-cv
Ragone v. Atlantic Video

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2008

Argued: August 5, 2009                                  Decided: February 17, 2010

Docket No. 08-4666-cv

_____

_____

RITA RAGONE,

Plaintiff-Appellant,

-v-

ATLANTIC VIDEO at the Manhattan Center, d/b/a/ MCP-AV,
INC., ESPN, WOODY PAIGE, JAY CRAWFORD, LORI BERLIN,

Defendants-Appellees.

_____

POOLER, HALL, and LIVINGSTON, Circuit Judges.

        Plaintiff-appellant Rita Ragone appeals from the opinion and order, dated August 27,
2008, of the United States District Court for the Southern District of New York (Koeltl, J.)
granting the motions of defendants-appellants Atlantic Video and ESPN to dismiss the complaint
and compel arbitration.  Specifically, the district court: (1) upheld the enforceability of the
arbitration agreement at issue against Ragone's claim that the agreement is both procedurally and
substantially unconscionable, and (2) held that Ragone can properly be compelled to arbitrate
with ESPN, in spite of the fact that it is not a signatory to the arbitration agreement. We AFFIRM
the district court.

_____

DAVID ZATUCHNI, Zatuchni & Associates, LLC New York, NY, for Plaintiff-Appellant.

ALAN S. BLOCK (Scott H. Goldstein, Andrew Butz, and Lynda Liebhauser, on the brief), Bonner Kiernan Trebach & Crociata, LLP, New York, NY, for Defendant-Appellee Atlantic Video, Inc.

KATHLEEN M. McKENNA, Proskauer Rose LLP, New York, NY, for Defendant-Appellee ESPN.

POOLER, Circuit Judge:

This case presents questions of law regarding the enforcement of arbitration agreements. After the defendants announced their intention to waive enforcement of certain provisions of the arbitration agreement at issue, the district court (Koeltl, J.) granted the defendants' motion to dismiss the complaint and compel arbitration. We affirm the district court because we believe that the arbitration agreement, as modified by the defendants' waivers, will allow the plaintiff to "vindicate [her] statutory cause[s] of action in the arbitral forum." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637 (1985). We emphasize, however, that it is not at all clear that we would reach the same result had the defendants attempted to enforce the arbitration agreement in its entirety.

**FACTS**

Plaintiff-appellant Rita Ragone brings this employment discrimination action under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. She also asserts claims under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 et seq., and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 et

2

seq. Specifically, Ragone contends that the defendants, for whom she worked, subjected her to "continuous sexual harassment [which] made [her] work environment hostile, abusive and intolerable . . . ." (¶ 21)[1]

Ragone devotes a substantial portion of her brief on this appeal to setting forth the details of her allegations of harassment. But while this recitation would certainly be relevant if the instant appeal called for us to review the district court's decision on a dispositive motion, such a motion is not under consideration here. Rather, the instant appeal considers whether the district court correctly held that Ragone's claims should be heard in an arbitral forum. Properly considered, this question takes no account of the merits of claims asserted in the complaint. See JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 171 (2d Cir. 2004) ("Determination of the arbitrability of . . . claims . . . does not in any way rest upon the strength of those claims."). Accordingly, whether or not they amount to a meritorious claim, the allegations of sexual harassment made by Ragone are not relevant here. The facts that are relevant to this appeal are few and straightforward.

**A. The Arbitration Agreement.** Ragone alleges that she "is a well-known and well-respected makeup artist and hairstylist to television and movie stars, dignitaries, athletes and houses of fashion." (¶ 12) Atlantic Video ("AVI"), which apparently operates under the name MCP-AV, Inc., is alleged to be "a digital broadcast and film production and post production company" which maintains a large television studio in New York City. (¶ 2) ESPN, the well-known cable television sports news service, "was a client of [AVI's] and operated various shows,

---

[1] The complaint, which was filed on June 27, 2007, will be cited by paragraph number.

3

including 'Cold Pizza,'" a morning sports news show, "out of [AVI's New York] studio." (¶ 3)[2]

Ragone was employed by AVI as a make-up artist from February 28, 2005 until April 11, 2006. (¶ 11) Ragone alleges that her termination by AVI on this latter date was an act of retaliation taken in response to her numerous complaints regarding acts of sexual harassment. (¶¶ 120)

Ragone's employment with AVI was made subject to her assent to an arbitration agreement, which contains the following provision:

> 1. I shall submit to the American Arbitration Association ("AAA") for final and binding arbitration by one arbitrator . . . any and all claims or controversies arising out of my employment or its termination including, but not limited to, claims concerning discipline and discharge; . . . claims for discrimination . . . ; claims of sexual harassment; . . . .
>
> 2. . . . I further understand, acknowledge, and agree that this Agreement shall be construed and enforced in accordance with the laws of the State of New York, without regard to principles of conflicts of law.

The arbitration agreement also contains a number of provisions regarding not only the conduct of arbitration proceedings, but also the conduct of any court proceeding that Ragone might initiate. Ragone asserts that several of these provisions are unconscionable, and therefore unenforceable. Specifically, as set forth by the district court, Ragone asserts that the arbitration agreement:

---

[2] Ragone also named four individual defendants in her complaint – her direct supervisor at AVI and three employees of ESPN – but the district court, after having given Ragone an opportunity to show cause to the contrary, dismissed these claims in a separate opinion and order, dated September 20, 2008, for failure to effect proper service. See Ragone v. Atlantic Video, No. 07-cv-6084, 2008 WL 4058480 at *1 n.1 (S.D.N.Y. Aug. 29, 2008). In her brief on this appeal, Ragone makes no argument regarding the dismissal of her claims against the four individual defendants. Accordingly, we deem Ragone to have waived any appeal of these dismissals. See Norton v. Sam's Club, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal.").

4

> (a) impermissibly shortens the statute of limitations [for bringing any demand for arbitration] to ninety days, (b) it requires that attorney's fees must be awarded to the prevailing party, (c) it prevents the plaintiff from appealing the arbitrator's award in court, and (d) it denies the plaintiff some of her rights in court by limiting her discovery rights and eliminating her right to a jury trial.

Ragone, 2008 WL 4058480, at *4.

Further, the arbitration agreement contains the following severability clause:

> In the event that any provision of this Agreement, or the application of such provision shall be held by a court of competent jurisdiction to be contrary to law, the remaining provisions of the Agreement shall remain in full force and effect. If any provisions regarding discovery or the time to make a demand for arbitration of claims . . . is deemed unenforceable, then such provision shall be modified automatically such that it comports with the applicable federal and/or New York law.

**B. The Status of ESPN.** It is undisputed that ESPN is not a signatory to the arbitration agreement. ESPN is also not mentioned, expressly or by implication, in either the arbitration agreement, or in any of the other documents relating to Ragone's initial employment that are contained in the record. Nevertheless, Ragone's complaint contains numerous allegations which support the district court's conclusion that her "claims of unlawful harassment and retaliation against AVI and ESPN rely on the concerted actions of both defendants and are therefore substantially interdependent." Ragone, 2008 WL 4058480, at *10.

First, Ragone asserts that she "was hired by [AVI] as a make-up artist for one of [its] significant clients, Defendant ESPN. Specifically, [she] was hired to provide make-up artistry and other services to ESPN's Cold-Pizza talent." (¶ 13) Further, while "she reported to [AVI] General Manager Ted Nelson, as well as to Ed Brancaccio and Douglas Sherman of [AVI]," she "was also required to follow the instructions and directives of ESPN talent and ESPN supervisors on the set . . . ." (¶ 17) In fact, Lori Berlin, who "has at all relevant time[s] been the Director of

5

Production for ESPN" was Ragone's "on-site supervisor during her employment with [AVI]" and two ESPN panelists are alleged to have "supervised [her] job duties . . . during her employment with [AVI]." (¶¶ 4-5, 7)

Further, the central allegation of the complaint is that "[a]lmost immediately after [she] commenced her employment with [AVI] for ESPN Cold Pizza, she became the victim of severe, pervasive and continuous sexual harassment by Cold Pizza talent Woody Paige and Jay Crawford." (¶ 18) In addition, it is alleged that "ESPN supervisors and other ESPN Cold Pizza talent repeatedly witnessed the sexual harassment and condoned the repulsive behavior of Defendants Paige and Crawford." (¶ 19) This "cause[d her] to complain on numerous occasions to both [AVI] and ESPN management employees about the behavior." (¶ 21) That is, Ragone "lodged numerous complaints to both [AVI] and ESPN management in an effort to put an end to the sexual harassment." (¶ 62) In sum, the complaint makes plain that both "[AVI] and ESPN subjected [Ragone] to persistent and continuous sexual advancements and harassment by Defendants Paige and Crawford." (¶ 110)

**C. The District Court's Opinion.** Applying New York law, the district court held that the arbitration agreement is not procedurally unconscionable, in spite of Ragone's representation of her lack of relevant education or sophistication. The district court found that she "has failed to show that AVI engaged in high-pressure tactics or deception in procuring [her] signature on the agreement." Ragone, 2008 WL 4058480, at *7. Further, even assuming the truth of Ragone's representation that she did not understand the arbitration agreement at the time she signed it, the district court found that this did not render the agreement unconscionable because Ragone "could have asked questions about [the agreement] and could have taken the employment documents

6

home to study them and she could have consulted a lawyer if she chose." Id. [3]

As to the question of the substantive unconscionability of the arbitration agreement, the district court's task was certainly made easier by the fact that the defendants explicitly waived any attempt to enforce various provisions of the arbitration agreement. Specifically, the defendants "agreed to waive the statutes of limitations and fee shifting provisions as set out in the arbitration agreement" and therefore these provisions "do not render the [arbitration] [a]greement substantively unconscionable." Id. at *5. Further, as to the provision of the arbitration award which forbids any appeal of the arbitrator's decision, the defendants represented to the district court that this would "not prevent the plaintiff from moving to vacate an arbitration award in federal court" pursuant to the provisions of the Federal Arbitration Act. Id. Moreover, the district court held that Ragone's objections to the provisions of the arbitration agreement limiting discovery in any court proceeding and waiving any right to a jury trial "are moot. Th[ese] provision[s are] directed at a situation where the parties proceed[] to litigation because the Court invalidated the arbitration procedure. That is not [the] case [here]." Id. at *6.

Finally, applying the doctrine of equitable estoppel, the district court held that ESPN's status as a non-signatory did not preclude Ragone's being compelled to arbitrate her claims against ESPN. This holding was based upon the fact that this Court has held that parties to an arbitration agreement may be compelled to arbitrate their claims against a non-signatory if these claims are sufficiently intertwined with her claims against a signatory. In this case, the district court found that "it is clear that [Ragone's] claims of unlawful harassment and retaliation against

---

[3] The district court, after hearing testimony from a handwriting expert, also rejected her claim that the signature on the arbitration agreement is not hers, but a forgery. Ragone, 2008 WL 4058480, at *4. Ragone has expressly elected not to appeal this finding.

7

AVI and ESPN rely on the concerted actions of both defendants and are therefore substantially interdependent." Id. at *10.

**ANALYSIS**

"We review the district court's determination of the arbitrability of [Ragone's] claim de novo, while accepting the court's factual determinations unless clearly erroneous." Garten v. Kurth, 265 F.3d 136, 141-42 (2d Cir. 2001). Ragone asserts claims under employment discrimination statutes and, as a general matter, "[c]ourts have consistently found that such claims can be subject to mandatory arbitration." Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144, 147 (2d Cir. 2004). Specifically, Ragone complains of acts of sexual harassment and, as noted above, the arbitration agreement at issue in this case expressly states that "claims of sexual harassment" are subject to arbitration. It is therefore self-evident here that "it may be said with positive assurance that the arbitration clause is . . . susceptible of an interpretation that covers the asserted dispute." Roby v. Corp. of Lloyd's, 996 F.2d 1353, 1361 (2d Cir. 1993) (internal quotation marks omitted).

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., "creates a body of federal substantive law of arbitrability applicable to arbitration agreements . . . affecting interstate commerce." Alliance Bernstein Inv. Research & Mgmt., Inc v. Schaffran, 445 F.3d 121, 125 (2d Cir. 2006) (internal quotation marks omitted). The parties do not dispute that the agreement at issue here affects interstate commerce and, accordingly, there is no question that the FAA applies.

The FAA is an expression of "a strong federal policy favoring arbitration as an alternative means of dispute resolution." Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.,

8

246 F.3d 219, 226 (2d Cir. 2001). In fact, this Court has said that "it is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy we have often and emphatically applied." Arciniaga v. Gen. Motors Corp., 460 F.3d 231, 234 (2d Cir. 2006) (internal quotation marks omitted). But emphatic application does not amount to automatic application. The FAA provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Accordingly, "generally applicable contract defenses, such as fraud, duress, or unsconscionabilty, may be applied to invalidate arbitration agreements." Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996).

A. **Unconscionability in General.** Ragone asserts that she cannot be compelled to submit her claims against either AVI or ESPN to arbitration because the arbitration agreement which the district court found that she signed as a condition of her employment is unconscionable and, therefore, unenforceable. As a general matter, even to the extent that the law recognizes that employers and individual employees do not possess equal bargaining power, the FAA certainly does not preclude the enforcement of employment contracts which make employment conditional upon an employee's acceptance of mandatory arbitration. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 33 (1991) ("[m]ere inequality in bargaining power" is not a basis for declining to enforce arbitration agreements contained in employment contracts). Still, it is possible that an arbitration agreement may contain terms so onerous as to render it unenforceable under Section 2 of the FAA. Further, "[i]t is clear that questions of contractual validity relating to the unconscionability of [an] arbitration agreement must be resolved first, as a matter of state law, before compelling arbitration pursuant to the FAA." Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel, 346 F.3d 360, 365 (2d Cir. 2003) (per curiam). As already noted, the

9

arbitration agreement at issue contains a choice of law clause which provides that New York law will govern the agreement's construction and enforcement.

One of the district courts of our Circuit has recently set forth the outlines of the New York law of unconscionability as follows:

> Under New York law, a contract is unconscionable when it is "so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforcable [sic] according to its literal terms." Gillman v. Chase Manhattan Bank, N.A. 73 N.Y.2d 1[, 10] (1988). Generally, there must be a showing that such a contract is both procedurally and substantially unconscionable. See id. "The procedural element of unconscionability concerns the contract formation process and the alleged lack of meaningful choice; the substantive element looks to the content of the contract[, per se]. State v. Wolowitz, 468 N.Y.S.2d 131, 145 (1983); see also Desiderio v. National Ass'n of Sec. Dealers, Inc., 191 F.3d 198, 207 (2d Cir. 1999) ("A contract or clause is unconscionable when there is an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." (quotation marks omitted)).

Nayal v. HIP Network Servs. IPA, Inc., 620 F. Supp. 2d 566, 571 (S.D.N.Y. 2009).

**B. Procedural Unconscionability.** Ragone's contention that the arbitration agreement was signed under procedurally unconscionable conditions is far short of convincing. Ragone argues that the undisputed fact that she was offered the arbitration agreement "on a 'take it or leave it' basis" renders it unenforceable. But it is plain that "this is not sufficient under New York law to render the [arbitration] provision procedurally unconscionable." Nayal, 620 F. Supp. 2d at 571 (citing cases). Further, Ragone asserts that she did not read the arbitration agreement before signing it. But this is of no moment in light of this Court's holding that it "cannot accept a rule that would allow a party to avoid his legal obligation to read a document carefully before signing it just because the document is an arbitration agreement under which

10

Title VII claims could be arbitrated." Gold, 365 F.3d at 150. Finally, New York law does not absolve Ragone of this obligation because she "does not have a college degree and has no experience or background in business or human resources." On the contrary, New York courts have repeatedly ruled that even the fact that a prospective employee possesses an imperfect grasp of the English language will not relieve the employee of making a reasonable effort to have the document explained to him. See Molina v. Coca-Cola Enters., Inc., No. 08-6370, 2009 WL 1606433, at *8 (W.D.N.Y. June 8, 2009) (citing cases). The arbitration agreement is therefore not procedurally unconscionable.

**C. Substantive Unconscionability.** "While determinations of unconscionability are ordinarily based on [a] conclusion that both the procedural and substantive components are present, there have been exceptional cases where a provision of the contract is so outrageous as to warrant holding it unenforceable on the ground of substantive unconscionability alone." Gillman v. Chase Manhattan Bank N.A., 73 N.Y.2d 1, 12 (1988) (internal citation omitted). As we have set forth above, Ragone argued before the district court that several provisions of the arbitration agreement she signed were substantially unconscionable. The district court avoided consideration of the unconscionability of any of the disputed terms for three reasons. First, the district noted that the defendants had "agreed to waive the statutes of limitations and fee shifting provisions as set out in the arbitration agreement" and therefore found that these provisions "do not render the [arbitration a]greement substantively unconscionable." Ragone, 2008 WL 4058480, at *5. Second, as to the provision of the arbitration agreement that forbids any appeal of the arbitrator's decision, the district court found that the defendants' representation that this would "not prevent the plaintiff from moving to vacate an arbitration award in federal court," pursuant to the provisions of the FAA, defeated the argument that the provision was

11

unconscionable.  Id.  Third, the district court held that Ragone's objections to the provisions of the arbitration agreement limiting discovery in any court proceeding and waiving any right to a jury trial "are moot" in light of the grant of the defendants' motion to compel arbitration.  Id. at *6.

On this appeal, Ragone criticizes the district court for what she sees as an improper piecemeal approach in its consideration of the arbitration agreement.  That is, Ragone believes that the district court missed the forest for the trees:

> In determining unconscionability, the District Court should have considered the Arbitration Agreement in its totality as it was written and presented to Ms. Ragone, and whether that overall document had the oppressive and unconscionable purpose and/or effect of deterring an employee in the exercise of her statutory rights. The District Court should have considered that the Arbitration Agreement as a whole, containing numerous unconscionable and oppressive terms, is irredeemably tainted by unconscionability and unlawful purpose.  As such, the unconscionability cannot simply be severed from the agreement, which should be held unenforceable in its entirety.

Although this is not an inconsiderable argument, we are compelled to reject it.

First, Ragone argues that the severability clause contained in the arbitration agreement will not serve to save the agreement because such a clause "cannot save an arbitration agreement that is permeated by unconscionability by the presence of multiple uneforceable provisions." The severability clause, however, has no relevance to this appeal.  According to its terms, the severability clause applies "[i]n the event that any provision of this Agreement, or the application of such provision shall be held by a court of competent jurisdiction to be contrary to law . . . ." The district court, however, did not hold any provision of the arbitration agreement to be contrary to law.  Rather, it resolved all questions of potentially unenforceable terms by holding that these terms were either moot, would be interpreted in a manner consistent with the FAA, or had been

12

waived. Thus, the district court did not trigger any application of the severability clause and, as a result, the question of whether or not the clause can "save" the arbitration agreement is not properly raised on this appeal.

Second, with respect to the provision of the arbitration agreement which forbids any appeal of the arbitrator's eventual decision, we do not see that Ragone posits any sufficient ground for reversal of the district court's acceptance of the defendants' representation that this provision would "not prevent the plaintiff from moving to vacate an arbitration award in federal court" pursuant to the provisions of the FAA. Ragone, 2008 WL 4058480, at *5. Similarly, Ragone does not seriously challenge the district court's holding that the provisions of the arbitration agreement relating to the conduct of court proceedings are plainly moot in light of the granting of the defendants' motion to compel arbitration.

That leaves the matter of the defendants' election to waive enforcement of two provisions of the arbitration agreement: (1) the limitations provision which mandates that Ragone must make a demand for arbitration "no later than ninety (90) calendar days after [her] claim arises or it will be conclusively resolved against [her] even if there is a statute of limitations that may have given [her] more time" and (2) the fee-shifting provision which requires that attorney's fees must be awarded to the prevailing party. Ragone argues that the district court erred in accepting these waivers because the arbitration agreement, when considered as a whole, is "packed with oppressive and unlawful provisions meant to disadvantage the employee." Acceptance of the defendants' waivers, Ragone declares, allows the defendants to "retain[] the benefit of a contract whose main purpose . . . was to unfairly prejudice" her. Unfortunately, Ragone supports this argument by relying upon cases applying law other than the law of New York, which is controlling here. See, e.g., Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 271 (3d Cir. 2003)

(under Virgin Islands law, court would not allow waiver of unconscionable provisions of arbitration agreement so as to enforce arbitration agreement "afflicted by so much fundamental and pervasive unfairness"); Ferguson v. Countrywide Credit Indus., Inc., 298 F.3d 778, 788 (9th Cir. 2002) (applying California law, court would refuse to enforce arbitration agreement "so permeated with unconscionable clauses" that waiver "cannot remove the unconscionable taint from the agreement").

We believe that New York law would allow for the enforcement of the arbitration agreement as modified by the defendants' waivers. First, New York courts have accepted offers by parties to waive the enforcement of certain provisions of arbitration agreements, and have evaluated those agreements as modified by the parties' after-the-fact waivers. See, e.g., Brower v. Gateway 2000, Inc., 676 N.Y.S.2d 569, 574-75 (1st Dep't 1998) (remanding for the determination of whether a substitute arbitration agreement alleviated the unconscionability problems of original provision); In re Currency Conversion Fee Antitrust Litig., 265 F. Supp. 2d 385, 411-12 (S.D.N.Y. 2003) (defendants' offer to pay arbitration-related fees and to waive fee-shifting rights meant plaintiff could not rely on arbitration costs as ground for finding arbitration agreement unconscionable). Because unconscionability is an equitable defense to the enforcement of harsh or unreasonable contract terms, Doctor's Assocs., Inc. v. Jabush, 89 F.3d 109, 113 (2d Cir. 1996), a party cannot complain when the defendant through its waivers declines to enforce any potentially unconscionable term.

In Schreiber v. K-Sea Transportation Corp., 9 N.Y.3d 331 (2007), which we note has not been cited by any of the parties, the New York Court of Appeals considered a provision of an arbitration agreement which directed that the employer would advance any fees of arbitration "up to $750.00."  When the plaintiff submitted a dispute to arbitration, the arbitrator demanded an

14

advance fee payment of $10,000.00, which the employer contended would be the employee's responsibility in the amount of $9,250.00. The Court of Appeals directed that "Schreiber should not be compelled to bear costs which would effectively preclude him from pursuing his claim." Id. at 341. That is, even though the arbitration agreement at issue apparently did not contain a severability clause, the Court of Appeals held that "any order compelling arbitration should be conditioned on K-Sea's agreement to bear any costs . . . subject later to reallocation of those costs by the arbitrator." Id.; accord Barbieri v. K-Sea Transp. Corp., 566 F. Supp. 2d 187, 194-95 (E.D.N.Y. 2008). Thus, rather than holding that a provision of an arbitration agreement which would preclude a party from vindicating its rights in arbitration rendered the entire agreement unenforceable, the Court of Appeals held that the offending provision should simply be disregarded.

As applied to the instant case, especially in light of the fact that we are charged with "encouraging and supporting arbitration," Lucent Techs. Inc. v. Tatung Co., 379 F.3d 24, 29 (2d Cir. 2004), we hold that Brower and Schreiber call for affirmance of the district court. Schreiber directs that "the appropriate remedy" when a court is faced with a plainly unconscionable provision of an arbitration agreement — one which by itself would actually preclude a plaintiff from pursuing her statutory rights — "is to sever the improper provision of the arbitration agreement, rather than void the entire agreement." Brady v. Williams Capital Group, L.P., 878 N.Y.S.2d 693, 701 (1st Dep't 2009). Just as Schreiber conditioned the order to arbitrate on the effective waiver of one provision of the arbitration agreement, and Brower evaluated the unconscionability of an agreement as modified by an after-the-fact waiver of one provision of the arbitration agreement, we can enforce an agreement that modifies a provision that otherwise might be unconscionable. This remedy has been effected here by the defendants' waiver of

15

enforcement of the arbitration agreement's statute of limitations and fee-shifting provisions.

Accordingly, we will not void the entire arbitration agreement signed by Ragone.

**D. A Note of Caution.** While we affirm the district court's holding that the arbitration agreement is enforceable as modified by the defendants' waivers, we emphasize that we do so with something less than robust enthusiasm. Although the enforceability of an arbitration agreement is decided in the first place under the applicable body of state law, Section 2 of the FAA also "create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the" statute. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). Pursuant to this body of law it has long been "clear that statutory claims may be the subject of an arbitration agreement." Gilmer, 500 U.S. at 26. Still, however, a federal court will compel arbitration of a statutory claim only if it is clear that "the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum," such that the statute under which its claims are brought "will continue to serve both its remedial and deterrent function." Mitsubishi, 473 U.S. at 637. Thus, as the Supreme Court stated in Mitsubishi, if certain terms of an arbitration agreement served to act "as a prospective waiver of a party's right to pursue statutory remedies . . . , we would have little hesitation in condemning the agreement as against public policy." Id. at 637 n.19.

In In re American Express Merchants' Litigation, 554 F.3d 300 (2d Cir. 2009), this Court recently applied these principles in order to deny enforcement of a term of an arbitration agreement that provided that claims could only be brought on an individual basis, thereby precluding the pursuit of class action claims in the arbitral forum. We found that the plaintiffs, who were attempting to press class action claims under federal antitrust statutes, had effectively proven "that enforcement of the ban will deprive them of substantive rights under the federal

16

antitrust statutes," id. at 316, because they had carried their burden of demonstrating that the pursuit of their claims on an individual basis would be economically irrational. We therefore concluded that the ban on class arbitration "cannot be enforced in this case because to do so would grant [the defendant] de facto immunity from antitrust liability by removing the plaintiffs' only reasonably feasible means of recovery." Id. at 320.

Had the defendants attempted to enforce the arbitration agreement as originally written it is not clear that we would hold in their favor. Specifically, as already noted, the arbitration agreement signed by Ragone includes both a ninety-day statute of limitations for filing an arbitration claim and a fee-shifting provision that requires that fees be awarded to the prevailing party. As Ragone forcefully argues, both of these terms would significantly diminish a litigant's rights under Title VII. Title VII requires a plaintiff to pursue and exhaust administrative remedies before bringing suit, see 42 U.S.C. §§ 2000(e) and (f), and "[i]n states such as New York that have an agency with the authority to address charges of discriminatory employment practices, the statute of limitations for filing a charge of discrimination with the [Equal Employment Opportunity Commission] is 300 days." Butts v. City of N.Y. Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1401 (2d Cir. 1993), superceded by statute on other grounds, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1072. Further, interpreting 42 U.S.C. Section 2000e-5(k), the Supreme Court has "held that 'a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable or groundless.'" Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 178 (2d Cir. 2006) (quoting Christianburg Garment Co. v. EEOC, 434 U.S. 412, 422 (1978)). Pursuant to this standard, "[a]s the decisions of this Court demonstrate, it is very rare that victorious defendants in civil rights cases will recover attorneys' fees." Sista 445 F.3d at 178. In sum, had the defendants not waived

17

enforcement, it is at least possible that Ragone would be able to demonstrate that these provisions were incompatible with her ability to pursue her Title VII claims in arbitration, and therefore void under the FAA.

We also take notice of Ragone's argument that waiver of the suspect provisions should not save the arbitration agreement because enforcement of the agreement, less the waived provisions, "create[s] highly undesirable incentives to employers" because it "teaches employers to create as oppressive and one-sided arbitration agreements as possible (with the hopes of chilling employment discrimination actions) while maintaining the expectation that [they] can still enforce arbitration by simply stating 'Never Mind' to all the unenforceable provisions that never should have been included in the first place." Because Ragone herself has not been chilled in asserting her Title VII rights–and we cannot see what plaintiff would be in such a position–we do not accept this claim.

ESPN asserts that the defendants elected to waive the statute of limitations and fee-shifting provisions in order to "show a willingness to work with [Ragone] in effort [sic] to process her claims though arbitration . . . ." Whether or not altruism was the motivation for the waivers, however, we conclude that the defendants' decision avoids a determination of issues that are far from insubstantial.

**E. Ragone's Claims Against ESPN.** "[A]rbitration is a matter of contract, and therefore a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." JLM Indus., 387 F.3d at 171 (internal quotation marks omitted) (second alteration in original). While we find no reason to disturb the district court's finding that Ragone signed the arbitration agreement proffered by AVI, ESPN neither signed that agreement, nor is ESPN mentioned therein. Rather, as we have already noted, AVI provided production facilities and

18

services to ESPN.  Nevertheless, this Court has "recognized a number of common law principles of contract law that may allow non-signatories to enforce an arbitration agreement, including equitable estoppel."  Ross v. Am. Express Co., 478 F.3d 96, 99 (2d Cir. 2007).

Under principles of estoppel, a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where a careful review of "the relationship among the parties, the contracts they signed . . . , and the issues that had arisen" among them discloses that "the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed."  Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co., 271 F.3d 403, 406 (2d Cir. 2001) (internal quotation marks and citation omitted).  This does not mean, however,

> that whenever a relationship of any kind may be found among the parties to a dispute and their dispute deals with the subject matter of an arbitration contract made by one of them, that party will be estopped from refusing to arbitrate. . . . [I]n addition to the "intertwined" factual issues, there must be a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement.

Sokol Holdings, Inc. v. BMB Munai, Inc., 542 F.3d 354, 359 (2d. Cir. 2008).

We agree with the district court that the relationship between Ragone, AVI, and ESPN supports the application of equitable estoppel.  It is true, as we have already said, that ESPN is not mentioned in the arbitration agreement, or in any other document relating to Ragone's initial employment that is contained in the record.  This is therefore not a case where ESPN is "linked textually" to Ragone's claims.  Choctaw Generation Ltd., 271 F.3d at 407.  Nevertheless, as set forth in her complaint, it is plain that when Ragone was hired by AVI, she understood ESPN to be, to a considerable extent, her co-employer.  As we have detailed above, Ragone asserts that

19

she "was hired by [AVI] as a make-up artist for one of [its] significant clients, Defendant ESPN. Specifically, [she] was hired to provide make-up artistry and other services to ESPN's Cold-Pizza talent." (¶ 13) Further, while "she reported to [AVI management]," she "was also required to follow the instructions and directives of ESPN talent and ESPN supervisors on the set . . . ." (¶ 17)

These facts provide a telling contrast to our decision in <u>Ross</u>. In that case, the plaintiffs were the holders of credit cards issued by certain banks (the "Issuing Banks") who, the plaintiffs alleged, had entered into a conspiracy with a third party ("Amex") in violation of federal antitrust laws. As a condition of receiving card privileges, the plaintiffs had signed agreements with the Issuing Banks (the "Cardholder Agreements"). The essence of the alleged conspiracy was that Amex had persuaded the Issuing Banks to include compulsory arbitration clauses in the Cardholder Agreements "in an effort to impede consumer litigation." <u>Ross v. Am. Express Co.</u>, 547 F.3d 137, 140 (2d Cir. 2008).

We reversed the district court's grant of Amex's motion to compel arbitration based upon the arbitration clauses contained in the Cardholder Agreements. Specifically, we held that Amex, as a non-signatory to the Cardholder Agreements, could not avail itself of the doctrine of equitable estoppel:

> It is indisputable that the subject matter of the dispute between the parties – the alleged conspiracy between Amex and the Issuing Banks to violate the antitrust laws – is related to the subject matter of the cardholder agreements the plaintiffs signed with the Issuing Banks. . . . But the further necessary circumstance of some relation between Amex and the plaintiffs sufficient to demonstrate that the plaintiffs intended to arbitrate this dispute Amex is utterly lacking here. . . . Amex did not sign the cardholder agreements, it is not mentioned therein, and it had no role in their formation or performance. The plaintiffs did not in any way treat with Amex as a party to the cardholder agreements. On the contrary, they do not

20

> allege to have treated Amex at all. . . . Amex's only relation with respect to the cardholder agreements was as a third party allegedly attempting to subvert the integrity of the cardholder agreements. In sum, arbitration is a matter of contract and, contractually speaking, the plaintiffs do not know Amex from Adam. Amex therefore cannot avail itself of the arbitration agreements contained in the cardholder agreements.

Id. at 146.

In this case, there is likewise no question that the subject matter of the dispute between Ragone and AVI is factually intertwined with the dispute between Ragone and ESPN. It is, in fact, the same dispute: whether or not Ragone was subjected to acts of sexual harassment which were condoned by supervisory personnel at AVI and ESPN. Moreover, in contrast to Ross, there is the presence of the further necessary circumstance of a relationship between Ragone and ESPN that justifies sending this entire dispute to arbitration. Ragone admits that she knew from the date of her employment by AVI that she would work with and be supervised by ESPN personnel in the ordinary course of her daily duties. This knowledge that she would extensively treat with ESPN personnel is sufficient to demonstrate the existence of a relationship between Ragone and ESPN that allows the latter to avail itself of the arbitration agreement between Ragone and AVI. Accordingly, we affirm the district court's conclusion that Ragone is properly estopped from avoiding arbitration with ESPN.

## CONCLUSION

The opinion and order of the district court is AFFIRMED.