**CHAMPION AUTO SALES, LLC, and Robert A. Lee, Jr., Plaintiffs,**

v.

**POLARIS SALES INC., Defendant.**

No. 12–CV–1842 (JS)(ARL).

United States District Court,
E.D. New York.

March 27, 2013.

Seth L. Dobbs, Esq., The Margolis Law Firm LLC, New York, NY, for Plaintiffs.

James M. Wicks, Esq., Farrell Fritz, P.C., Uniondale, NY, James J. Long, Esq., Jay W. Schlosser, Esq., Briggs and Morgan, P.A., Minneapolis, MN, For Defendant.

## MEMORANDUM & ORDER

SEYBERT, District Judge.

Plaintiffs Champion Auto Sales, LLC ("Champion") and Robert A. Lee, Jr. (together, "Plaintiffs") commenced this breach of contract action against Polaris Sales Inc. ("Polaris") on April 5, 2012. Pending before the Court is Polaris's motion to compel arbitration and/or stay the action pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et *seq.* For the following reasons, Polaris's motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

On or around July 21, 2011, Champion and Polaris entered into an agreement (the "Dealer Agreement" or "Agreement"), pursuant to which Champion was authorized to sell and service the following Polaris-brand vehicles: snowmobiles, all-terrain vehicles ("ATVs"), Ranger™ vehicles, low-speed vehicles ("LSVs"), and Victory Motorcycles (collectively, the "Products"). (Peterson Decl., Docket Entry 16, Ex. A, Dealer Agreement at 1.) Although there was only one Dealer Agreement, it "[was] independently and separately enforceable for each Product designated, and the use of [a] common Agreement [was] intended to simplify the execution of the Agreement[s]." (Peterson Decl. Ex. A, Dealer Agreement at 1.) The Agreement was signed by a representative of Polaris and by Plaintiff Lee on behalf of Champion.[1]

There are three provisions of the Dealer Agreement that are relevant to the pending motion: Section 19's arbitration provision, Section 20's choice-of-law provision, and Section 18's attorneys' fees provision. The arbitration provision (the "Arbitration Provision") provided, in relevant part, that:

All disputes, controversies, and claims arising out of, or in connection with, the execution, interpretation, performance, nonperformance, or breach of this Agreement (including without limitation the validity, scope, enforceability, and

---

1. Lee is the sole owner of Champion. (Compl. ¶¶ 2, 7.)

voidability under any statute, regulation, ordinance, or ruling), or termination or non-renewal of this Agreement, or of any provision of this Agreement (including without limitation this arbitration provision, the arbitrability of any issue, and the jurisdiction of the arbitrator), or arising out of or in connection with any claimed duty, right, or remedy (whether arising under this Agreement or any statute, regulation, ordinance, or other rule of law or otherwise) relating to any of the foregoing, shall be solely and finally settled by arbitration in Minneapolis, Minnesota, in accordance with the United States Arbitration Act (9 U.S.C. § 1 *et seq.)*, and the rules of the American Arbitration Association relating to commercial arbitration.

(Peterson Decl. Ex. A, Dealer Agreement § 19(a).)[2] The choice-of-law provision provided for the application of Minnesota law. (Peterson Decl. Ex. A, Dealer Agreement § 20(k).) And the attorneys' fees provision provided, in relevant part, that:

> In any action or proceeding relating to or arising out of this Agreement brought by either Party, whether such action or proceeding be founded upon contract, tort, statute, regulation, or otherwise, Polaris shall be entitled to recover from [Champion] its costs and expenses (including, but not limited to, reasonable attorneys' fees) of prosecuting and/or defending any such action or proceeding in which Polaris has substantially prevailed. For purposes of this Agreement, Polaris shall be considered to have "substantially prevailed" in such action or proceeding if: ... (3) Polaris successfully moves to compel arbitration pursuant to Section 19 of this Agreement.

(Polaris Decl. Ex. A, Dealer Agreement § 18.)

On or around January 12, 2012, Polaris sent Plaintiffs a Notice of Termination, accusing Plaintiffs of breaching the Dealer Agreement and stating its intention to terminate the Agreement in fifteen days. (Peterson Decl. Ex. B.)

On April 5, 2012, Plaintiffs commenced this action in New York State Supreme Court, Suffolk County, asserting the claims for: (1) specific performance of the Dealer Agreement; (2) promissory estoppel; (3) preliminary and permanent injunctive relief; (4) breach of the Agreement; (5) breach of the New York Franchised Motor Vehicle Act, N.Y. VEH. & TRAF. LAW § 463; (6) breach of the Automobile Dealer's Day in Court Act, 15 U.S.C. § 1221 *et seq.;* and (7) breach of covenant of good faith and fair dealing. Polaris removed the action to this Court on April 13, 2012 and on June 15, 2012 filed the pending motion to compel arbitration and/or stay and for attorneys' fees and costs.

## DISCUSSION

Polaris is seeking to compel arbitration of Champion's claims and to stay Lee's claims, which it concedes for the purpose of this motion are not arbitrable. The Court will first discuss the standard of review on motions to compel arbitration, before addressing the merits of Polaris's motion to compel arbitration and/or stay the proceedings. Finally, the Court will address Polaris's request for attorneys' fees and costs.

### I. *Standard of Review under the FAA*

When reviewing a motion to compel arbitration or stay an action pursuant to the FAA, "the court applies a standard

---

**2.** Notice of the Arbitration Provision was also included on the Agreement's signature page in bold typeface. (Peterson Decl. Ex. A, Dealer Agreement at 1.)

similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe–Riat,* 316 F.3d 171, 175 (2d Cir.2003); *Teah v. Macy's Inc.,* No. 11–CV–1356, 2011 WL 6838151, at *4 (E.D.N.Y. Dec. 29, 2011). Where there exists "an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Bensadoun,* 316 F.3d at 175; *Teah,* 2011 WL 6838151, at *4. But where "the party seeking arbitration has substantiated the entitlement [to arbitration] by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute to be tried." *Oppenheimer & Co. v. Neidhardt,* 56 F.3d 352, 358 (2d Cir.1995); *cf. Manning v. Energy Conversion Devices, Inc.,* 833 F.2d 1096, 1103 (2d Cir. 1987) ("Arbitration is intended to be a process for the swift resolution of disputes, and parties endeavoring to resist arbitration must alert district courts promptly and finally to whatever claims they may have in opposition to arbitration and the evidentiary basis of such claims.").

## II. *Arbitrability of Plaintiffs' Claims*

■ The FAA expresses a strong federal policy favoring arbitration. *Ragone v. Atl. Video at Manhattan Ctr.,* 595 F.3d 115, 121 (2d Cir.2010). The FAA states that arbitration agreements are valid, enforceable and irrevocable, unless such grounds exist for the revocation of the contract. 9 U.S.C. § 2; *see also Ragone,* 595 F.3d at 121. In keeping with this policy, the Court resolves doubts in favor of arbitration and enforces privately-negotiated arbitration agreements in accordance with their terms. *See Collins &*

*Aikman Prods. Co. v. Bldg. Sys., Inc.,* 58 F.3d 16, 19–20 (2d Cir.1995).

■ Courts generally resolve four inquiries in determining a cause of action's arbitrability: (1) whether the parties agreed to arbitrate; (2) the scope of the agreement; (3) if federal statutory claims are asserted, whether Congress intended that certain claims be nonarbitrable; and (4) if some, but not all, of the claims are arbitrable, whether to stay the balance of the proceeding pending arbitration. *JLM Indus., Inc. v. Stolt–Nielsen SA,* 387 F.3d 163, 169 (2d Cir.2004) (quoting *Oldroyd v. Elmira Sav. Bank, FSB,* 134 F.3d 72, 75–76 (2d Cir.1998)); *see also Follman v. World Fin. Network Nat'l Bank,* 721 F.Supp.2d 158, 161 (E.D.N.Y.2010). The Court will address each inquiry in turn.

### A. *Agreement to Arbitrate*

■ Whether the parties agreed to arbitrate is a question of state law, *Bell v. Cendant Corp.,* 293 F.3d 563, 566 (2d Cir. 2002), and, as the Agreement contains a Minnesota choice-of-law provision, the Court looks to Minnesota law to determine whether there is a valid agreement to arbitrate, *see Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.,* 230 F.3d 549, 556 (2d Cir.2000) ("New York law is clear in cases involving a contract with an express choice-of-law provision: Absent fraud or violation of public policy, a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction."); [3] *see also Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc.,* 414 F.3d 325, 332 (2d Cir.2005) ("The validity of a contractual choice-of-law clause is a threshold ques-

---

**3.** Neither party asserts fraud or a violation of public policy with respect to the choice-of-law provision. Further, as Polaris's principal place of business is in Minnesota (Compl. ¶ 3), the state has sufficient contacts with the transaction, *see Follman,* 721 F.Supp.2d at 161 (enforcing an Ohio choice-of-law provision because the defendant's principal place of business was in Ohio).

tion that must be decided not under the law specified in the clause, but under the relevant forum's choice-of-law rules governing the effectiveness of such clauses.").

■ Under Minnesota law, "[t]he formation of a contract requires communication of a specific and definite offer, acceptance, and consideration." *Commercial Assocs., Inc. v. Work Connection, Inc.,* 712 N.W.2d 772, 782 (Minn.Ct.App.2006). The parties do not dispute the validity of the Agreement in total; in fact, the parties conducted business together for several years before this dispute arose and Plaintiffs seek specific performance under the Agreement (*see* Compl. ¶¶ 9–14, 25). Rather, Plaintiffs argue that the Arbitration Provision is not enforceable because (1) it is unconscionable and (2) it is barred by New York's Franchised Motor Vehicle Dealer Act. The Court will address each argument separately.

### 1. *Unconscionability*

■ Under Minnesota law, a contract "is unconscionable if it is such as no man in his senses and not under delusion would make on one hand, and no honest and fair man would accept on the other." *Overholt Crop Ins. Serv. Co. v. Bredeson,* 437 N.W.2d 698, 702 (Minn.Ct.App.1989). In determining whether an arbitration clause is unconscionable, a court should "examine[ ] the sophistication of the parties, the circumstances surrounding the execution of the agreement, and the burden arbitration places on the complaining party." *Alexander v. Minn. Vikings Football Club L.L.C.,* 649 N.W.2d 464, 467 (Minn.Ct.App. 2002) (internal quotation marks and citation omitted). Here, Plaintiffs argue that the Arbitration Provision is unconscionable because: (1) the Dealer Agreement, which

was a form contract drafted by Polaris, afforded Champion "no meaningful choice" (Pls. Opp. 7) and (2) its terms "clearly favor Polaris" (Pls. Opp. 8).

■ Neither argument has merit. *First,* " '[t]he use of a standard form contract between two parties of admittedly unequal bargaining power does not invalidate an otherwise valid contractual provision.' " *Wold v. Dell Fin. Servs., L.P.,* 598 F.Supp.2d 984, 988 (D.Minn.2009) (quoting *Webb v. R. Rowland & Co.,* 800 F.2d 803, 807 (8th Cir.1986)); *see also Siebert v. Amateur Athletic Union of U.S., Inc.,* 422 F.Supp.2d 1033, 1046 (D.Minn.2006) (stating that the lack of an opportunity to negotiate the terms did not render a contract provision unenforceable).[4] *Second,* although arbitrating in Minnesota would be more convenient for Polaris, whose headquarters are located in Minnesota, the Court does not find the Arbitration Provision so one-sided as to be unconscionable. *See Siebert,* 422 F.Supp.2d at 1046 (finding a clause requiring arbitration in Florida to be valid and enforceable because "Florida is not a 'remote alien forum' chosen to discourage legitimate claims; it is simply a forum with a strong connection to one of the parties"). *Finally,* "the fact that arbitration agreements are preferred as a matter of national policy creates a presumption that they are generally enforceable as a matter of contract law." *Wold,* 598 F.Supp.2d at 988 (citing *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 443, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006)).

Accordingly, the Court finds that the Arbitration Provision is not unconscionable and that there is a valid agreement to arbitrate.

---

**4.** The Court notes that the inequality of the parties' bargaining power is questionable as Lee "has more than twenty-five (25) years experience in the automotive business and has owned and operated several motor vehicle dealerships." (Compl. ¶ 7.)

### 2. *New York's Franchised Motor Vehicle Dealer Act*

New York's Franchised Motor Vehicle Dealer Act provides, in relevant part, as follows:

> Whenever a franchise provides for the use of arbitration to resolve a controversy arising out of or relating to such contract, arbitration may be used to settle such controversy only if after such controversy arises all parties to such controversy consent in writing to use arbitration to settle such controversy.

N.Y. VEH. & TRAF. LAW § 469(2). Thus, Plaintiffs argue that the Arbitration Provision is unenforceable because it was entered into before the controversy arose. The Court disagrees. "Once it has been determined that the FAA applies to a particular arbitration agreement, incongruent state statutory schemes are preempted." *Shamah v. Schweiger*, 21 F.Supp.2d 208, 212 (E.D.N.Y.1998) (citing *Allied–Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 272–273, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995)); *see also Southland Corp. v. Keating*, 465 U.S. 1, 10, 16, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984) (holding that a state law anti-arbitration provision was preempted by the FAA and in violation of the Supremacy Clause); *Spirit & Sanzone Distribs. Co. v. Coors Brewing Co.*, No. 08–CV–0251, 2008 WL 612622, at *3 (S.D.N.Y. Mar. 3, 2008) (finding that the FAA preempted provisions of New York's Alcoholic Beverage Control Law that conflicted with the parties' arbitration clauses); *John G. Ryan, Inc. v. Molson USA, L.L.C.*, No. 05–CV–3984, 2005 WL 2977767, at *6 (E.D.N.Y. Nov. 7, 2005) (same).

Therefore, the Court finds that the provision of the Franchised Motor Vehicle Dealer Act limiting the applicability of arbitration clauses is preempted by the FAA and, thus, does not invalidate the Arbitration Provision at issue here.

### B. *Scope of the Agreement to Arbitrate*

Next, the Court must determine whether Champion's claims fall within the scope of the Arbitration Provision. "Whether a party has agreed to arbitrate a particular dispute is a matter of contract interpretation," and as such will be examined under state law. *Ottman v. Fadden*, 575 N.W.2d 593, 595 (Minn.Ct.App.1998); *see also Siebert*, 422 F.Supp.2d at 1044 ("When deciding whether the parties agreed to arbitrate a particular dispute, state law governs."). Under Minnesota law, the arbitrability of a claim "is for the Court [to decide] unless there is 'clear and unmistakable' evidence that the parties intended this question to be resolved by an arbitrator." *Siebert*, 422 F.Supp.2d at 1044 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)).

Here, the Arbitration Provision provides that "[a]ll disputes, controversies, and claims arising out of, or in connection with" the Dealer Agreement "including without limitation … *the arbitrability of any issue* … shall be solely and finally settled by arbitration." (Peterson Decl. Ex. A, Dealer Agreement ¶ 19(a) (emphasis added).) Thus, the arbitrability of Champion's claims, whether for breach of the Agreement, for violation of the New York Franchised Motor Vehicle Act or Automobile ·Dealer's Day in Court Act, or equitable or injunctive relief, are subject to arbitration. *See City of Duluth v. Local 101 Int'l Ass'n of Firefighters*, No. A11–1494, 2012 WL 2202950, at *3 (Minn.Ct. App. June 18, 2012) ("Even where the parties' intention is 'reasonably debatable as to the scope of the arbitration clause, the issue of arbitrability is to be initially determined by the arbitrators.'" (quoting

*Atcas v. Credit Clearing Corp. of Am.*, 292 Minn. 334, 341, 197 N.W.2d 448, 452 (1972)); *see also Cmty. Partners Designs, Inc. v. City of Lonsdale*, 697 N.W.2d 629, 632 (Minn.Ct.App.2005) (same)).

### C. *Whether Congress Intended Any of Plaintiffs' Claims to be Nonarbitrable*

The Second Circuit has found that parties, "[h]aving made the bargain to arbitrate, . . . should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 235 (2d Cir.2006) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). Here, Plaintiffs argue that Congress explicitly carved out an exception to the FAA in passing the Motor Vehicle Franchise Contract Arbitration Fairness Act (the "Fairness Act"), 15 U.S.C. § 1226. The Court agrees.

The Fairness Act provides, in relevant part, as follows:

> [W]henever a motor vehicle franchise contract provides for the use of arbitration to resolve a controversy arising out of or relating to such contract, arbitration may be used to settle such controversy only if after such controversy arises all parties to such controversy consent in writing to use arbitration to settle such controversy.

15 U.S.C. § 1226. Thus, the Fairness Act precludes the enforcement of pre-dispute arbitration clauses in "motor vehicle franchise contracts." The parties do not dispute that the Dealer Agreement was entered into before the dispute arose; therefore, the issue is whether the Dealer Agreement is a "motor vehicle franchise contract" under the Fairness Act.

The Fairness Act defines a "motor vehicle franchise contract" as "a contract under which a motor vehicle manufacturer, importer, or distributor sells motor vehicles to any other person for resale to an ultimate purchaser and authorizes such other person to repair and service the manufacturer's motor vehicles." 15 U.S.C. § 1226(a)(1)(B). And "motor vehicle" is defined as "a vehicle driven or drawn by mechanical power and manufactured *primarily for use on public streets, roads, and highways*, but does not include a vehicle operated only on a rail line." 49 U.S.C. § 30102(a)(6) (emphasis added). Affording this definition its plain meaning, a motor vehicle only comes under the ambit of the Fairness Act when the vehicle has been manufactured with the primary purpose of being used on public streets, roads, and highways. Thus, snowmobiles, ATVs, Rangers, and LSVs—which are not used primarily (if at all) on public streets (Supp. Peterson Decl. ¶ 3)—are not motor vehicles under the Fairness Act, but motorcycles are, *see Johnson v. Harley–Davidson Motor Co.*, 285 F.R.D. 573, 584 (E.D.Cal.2012) (stating that motorcycles fit within 49 U.S.C. § 30102's definition of "motor vehicles"); *Modified Motorcycle Ass'n of Mass., Inc. v. Commonwealth*, No. CV–A–01–2435–C, 2001 WL 1517574, at *3 (Mass.Supp. Nov. 15, 2001).

Because the Dealer Agreement is "independent and separately enforceable" for each Product (Peterson Decl. Ex. A, Dealer Agreement at 1), the Arbitration Provision is also separately enforceable for each Product. Therefore, the Court finds that Plaintiffs' claims arising out of their Polaris snowmobile, ATV, Ranger, and LSV franchises are arbitrable, and their claims arising out of their Victory Motorcycle franchise are not.

### D. *Whether to Stay the Remaining Claims*

Having determined that at least some of Champion's claims are arbitrable, the

Court must determine whether to stay the remaining claims—namely Lee's claims and Champion's claims arising out of the Victory Motorcycle franchise—pending completion of the arbitration.

■■■ A party seeking a stay pending arbitration bears the burden of establishing that "there are issues common to the arbitration and the court, and that those issues will finally be determined by arbitration." *Birmingham Assocs. Ltd. v. Abbott Labs.*, 547 F.Supp.2d 295, 302 (S.D.N.Y.2008) (quoting *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 76 (2d Cir. 1997)) (internal quotation marks omitted). "If this test is met, the movant has the burden of showing that it will not hinder arbitration, that the arbitration will be resolved within a reasonable time, and that any delay that may occur will not cause undue hardship to the nonmoving party." *Id.* Ultimately, however, "[t]he decision whether to stay nonarbitrable claims pending arbitration is largely within the discretion of the trial court." *Acquaire v. Can. Dry Bottling*, 906 F.Supp. 819, 838 (E.D.N.Y.1995).

■■ The Court finds that a stay is appropriate here. Plaintiff Lee's claims appear to be identical to Champion's claims, and the analysis of the claims related to the non-motor vehicle franchises will be identical to the claims related to the Victory Motorcycle franchise. Thus, a stay would "promote judicial economy, avoidance of confusion and possible inconsistent results." *Id.; see also Weizmann Inst. of Sci. v. Neschis*, 421 F.Supp.2d 654, 676 (S.D.N.Y.2005) (noting that "[c]ollateral estoppel applies to issues resolved in arbitration, assuming there has been a 'final determination on the merits, notwithstanding a lack of confirmation award'" (quoting *Jacobson v. Fireman's Fund Ins. Co.*, 111 F.3d 261, 267–68 (2d Cir.1997))).

### III. *Whether to Compel Arbitration*

Polaris asks this Court to enter an order compelling arbitration in Minnesota—the forum provided for in the Agreement. The Second Circuit, however, "has not yet decided how a district court should proceed when a suit pending before it involves an arbitration agreement which specifies that arbitration should take place outside the court's district." *Indian Harbor Ins. Co. v. Global Transp. Sys., Inc.*, 197 F.Supp.2d 1, 2 (S.D.N.Y.2002). Other circuit courts that have addressed this issue are split. Some courts have held that a district court can compel arbitration outside of its own district in the district specified in the arbitration agreement. *See, e.g., Dupuy–Busching Gen. Agency Inc. v. Ambassador Ins. Co.*, 524 F.2d 1275 (5th Cir.1975). This approach, however, conflicts with Section 4 of the FAA, which provides that a court can compel arbitration only within its own district. 9 U.S.C. § 4 ("The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed."). Other courts have held that a district court can ignore the contract's forum-selection clause and compel arbitration in its own district. *See, e.g., Textile Unlimited, Inc. v. A. BMH & Co.*, 240 F.3d 781, 783 (9th Cir.2001). However, this approach also conflicts with Section 4 of the FAA, which states that "the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Finally, other circuit courts have held that a district court cannot compel arbitration in either forum and should instead stay the proceedings pending resolution of the arbitration in the foreign district. *See, e.g., Snyder v. Smith*, 736 F.2d 409, 418–20 (7th Cir.1984). This approach, however, also conflicts with the FAA, which provides that a party "may petition

any United States district court" for an order compelling arbitration. 9 U.S.C. § 4. Thus, no approach is perfect.

■ When a contract's forum-selection clause mandates arbitration in a foreign district, district courts in the Second Circuit appear to follow the third approach—*i.e.*, staying the federal litigation pending conclusion of the arbitration out-of-state. *See, e.g., Provident Bank v. Kabas,* 141 F.Supp.2d 310, 315 (E.D.N.Y.2001) ("Where an agreement to arbitrate specifies a venue outside of the district in which the petition is filed, no order to compel may be entered; only a stay is available."); *DaPuzzo v. Globalvest Mgmt. Co.,* 263 F.Supp.2d 714, 727–28 (S.D.N.Y.2003) ("[W]here a federal court lacks authority pursuant to 9 U.S.C. § 4 to compel arbitration outside its district, the court may still determine that the dispute nonetheless remains 'referable to arbitration' elsewhere, if a forum is designated, and must then order a stay pursuant to § 3 instead, thereby leaving the parties free to pursue their contractual rights and remedies in the appropriate venue."); *see also Duran v. J. Hass Group L.L.C.,* No. 10–CV–4538, 2012 WL 3233818, at *3 (E.D.N.Y. June 8, 2012); *Nat'l City Golf Fin. v. Higher Ground Country Club Mgmt. Co.,* 641 F.Supp.2d 196, 202 (S.D.N.Y.2009); *Argus Media Ltd. v. Tradition Fin. Servs. Inc.,* No. 09–CV–7966, 2009 WL 5125113, at *2 n. 1 (S.D.N.Y. Dec. 29, 2009); *Sea Spray Holdings, Ltd. v. Pali Fin. Grp., Inc.,* 269 F.Supp.2d 356, 363 (S.D.N.Y.2003). This Court agrees with the weight of authority and finds that it lacks authority to compel arbitration in Minnesota.

Therefore, Polaris's motion to compel arbitration is DENIED. The Court will, however, stay this action so the parties can arbitrate the arbitrable claims in Minnesota. Accordingly, Polaris's motion to stay is GRANTED.

### IV. *Attorneys' Fees and Costs*

■ Finally, Polaris moves for attorneys' fees and costs pursuant to Section 18 of the Dealer Agreement. Section 18 provides, in relevant part, that Polaris is entitled to recover from Champion its expenses and costs, including attorneys' fees, if "Polaris successfully moves to compel arbitration." (Peterson Decl. Ex. A, Dealer Agreement § 18.) The Court, however, has denied Polaris's motion to compel arbitration. Accordingly, Polaris's request is DENIED. The Court notes however that this issue was barely briefed by Polaris and not addressed at all by Champion in its opposition. Therefore, the Court denies Polaris's request with leave to renew within thirty days of the date of this Memorandum and Order.

### CONCLUSION

For the foregoing reasons, Polaris's motion is GRANTED IN PART and DENIED IN PART. To the extent that Polaris moves to compel arbitration, the motion is DENIED, and to the extent that it seeks a stay pending the completion of arbitration, the motion is GRANTED. Further, Polaris's motion for costs and expenses is DENIED with leave to renew within thirty days of the date of this Memorandum and Order. If Polaris fails to so move within the time prescribed, this action shall be administratively closed subject to reinstatement by application of the parties after arbitration is complete.

SO ORDERED.